## CARLTON v. REEVES.

1. G. borrowed money from a mortgage company, and executed to such company his deed to secure this loan. Thereafter G. executed his note to a bank, and to secure the same executed to the bank a mortgage upon the same property. The bank reduced its claim against G. to judgment, and also foreclosed its mortgage and obtained a judgment of foreclosure thereon. To enable it to levy its execution upon the property embraced in the security deed, the bank paid up the claim of the mortgage company, taking a transfer to itself of the note held by said company and secured as above, and this company then conveyed to the defendant this property for the sole purpose of enabling the bank to levy thereon and collect its judgment. The bank then transferred, without recourse, its judgment to the plaintiff. Thereafter the bank reduced to general judgment the note so transferred to it by said company. The bank then transferred this judgment, without recourse, to the plaintiff. Before the rendition of this latter judgment, and after the execution of said security deed to the mortgage company and his mortgage to the bank, the defendant by his warranty deed conveyed this land to the Southland Investment Company, under whom the claimant asserts title. *Held*, that the title of the claimant was subject to the liens of both said security deed and said mortgage and to both of said judgments.

2. When the holder of a judgment, junior in date to a security deed, pays to the grantee therein the debt for the purpose of levy and sale of the property thereby secured, therein embraced, he is subrogated to the rights of the vendee in the security deed, and is entitled to a lien against the land for the debt thereby secured and thus taken up by him.

3. Where the transferee of the debt secured by such deed reduces the same to judgment, all that is essential to the enforcement of a special lien in his favor is the rendition of a general judgment thereon, the conveyance by the vendee in the security deed to the defendant of the lands embraced therein, and proof aliunde that such judgment was rendered upon the secured debt.

4. Such conveyance from the vendee in the security deed to the defendant did not put the title in the latter except for the purpose of levy and sale, and was a mere escrow except for such purpose; and before the grantee in such deed would obtain the title to the property therein conveyed, he must pay up both the debt secured by the security deed and the junior judgment obtained upon his note secured by his mortgage on the same property, prior to his conveyance thereof to another.

5. The vendee in the security deed holds the legal title for the benefit of the owner of the debt. As long as the vendee owns the debt, he holds the title for his own benefit; and after the transfer of the debt, but not the title, he holds the title for the benefit of the transferee. Such vendee still holds the title for the benefit of his transferee, until a sale is effected or the debt thus secured and said junior judgment are both paid, although he may have made a conveyance for the purpose of enabling the holder of a junior judgment to levy upon and sell the property embraced in his security deed.

No. 3997. FEBRUARY 16, 1924. REHEARING DENIED MARCH 1, 1924.

Equitable petition. Before Judge Roop. Meriwether superior court. September 5, 1923.

In 1908 Gough B. Grant gave to the Scottish & American Mortgage Company his note for $9000, and to secure the same executed to that company a security deed to certain described lands. In 1912 Grant executed to the Bank of Bullochville his note for $2100, and secured the same by a mortgage on the lands embraced in the above security deed. In 1918 the bank obtained in the city court of Greenville a general judgment on its note. The bank also foreclosed its mortgage in Meriwether superior court; and a mortgage fi. fa. was duly issued on the judgment of foreclosure. In May, 1919, Grant, for a consideration of $20,000, executed a general warranty deed to said lands to John A. Carlton. In June, 1919, Carlton conveyed the lands to the Southland Investment Company by his warranty deed. In November, 1919, the bank, having paid the mortgage company the balance due it by Grant, procured that company to execute a quitclaim deed to Grant to the lands. This deed recited that the bank had obtained a judgment against Grant in the city court of Greenville for the sums due on its said note of $2100; that the bank had also obtained a judgment in the superior court of Meriwether County, on the mortgage foreclosure, for the sums due on said mortgage; that said bank had paid the sums due the mortgage company on its indebtedness secured by said deed; and that the mortgage company conveyed the premises in dispute to Grant, the defendant in the execution issued on the judgment in the city court of Greenville, for the purpose and in order that said execution might be levied on said land and the same sold as the property of Grant, as provided in section 6038 of the Civil Code, with all rights, members, and appurtenances to said lands in any wise appertaining or belonging. The bank caused its execution for $2100 to be levied on said lands, and the lands to be advertised for sale on the first Tuesday in January, 1920. On the day of sale Reeves paid to the bank the sums due it on said execution, and received the transfer of the fi. fa. from the bank without recourse. Reeves then called off the sale. On Jan. 20, 1920, the bank obtained a judgment against Grant on the note which had been transferred to it by the mortgage company, the same being a general judgment against Grant. On Feb. 26, 1920, Reeves paid to the bank the several sums due on said last-named

judgment; and the bank transferred to him the execution issued thereon, without recourse.   On Nov. 23, 1922, the Southland Investment Company conveyed said lands to P. W. Carlton, by its warranty deed.   In June, 1923, Reeves caused a levy to be made on said lands under the execution for the principal sum of $2100, and under the execution for the principal sum of $7000, the latter being the execution obtained against Grant on the notes transferred to the bank by the mortgage company.   Reeves caused said lands to be advertised for sale under said levies on the first Tuesday in July, 1923.   P. W. Carlton filed a claim to said lands in forma pauperis.   Reeves filed his equitable petition in aid of his said levies, in which he recited the facts above stated, and that both Grant and Carlton were insolvent; and prayed for the appointment of a receiver to take possession of said lands, rent the same out, collect the rents, and hold the same to be applied to said judgments.

The claim of Carlton and the equitable petition of Reeves were consolidated and submitted upon an agreed statement of facts to the judge for decision without the intervention of a jury.   The agreed statement of facts contained the facts hereinbefore set forth. The trial judge rendered judgment in favor of Reeves; and to this judgment Carlton excepts and assigns error thereon.   His specific assignments of error are:  (1)  that the court erred in ruling that the common-law judgment obtained by the Bank of Bullochville on the notes given by Grant to the mortgage company, which were secured by his deed to the lands in dispute, was a lien upon said lands when the same had been conveyed by Grant by his warranty deed to John A. Carlton on May 30, 1919, for a valuable consideration;  (2)  that the court erred in holding that the Bank of Bullochville acquired a special lien on said lands under said common-law judgment against Grant when said lands had been so conveyed; and  (3)  that said judgment in favor of the plaintiff was erroneous because, although Grant had executed his security deed to the mortgage company to secure his said notes to that company, and although the Bank of Bullochville had paid off this indebtedness to the mortgage company, taking a transfer of the notes due said company, and had procured the mortgage company to execute a quitclaim deed with the recitals therein above set out, whatever equitable lien the bank might have had on said lands by reason

of said transfer of the notes of the mortgage company to the bank was lost when the bank assigned its execution for the principal sum of $2100 to Reeves, the judgment on the transferred notes not having been obtained until after the execution for $2100 had been transferred by the bank to Reeves, and not having been obtained until after Grant had conveyed the lands to Carlton, the predecessor in title of Reeves, for a valuable consideration, and the payment by Reeves to the bank of the sums called for in said judgment for the principal sum of $7000 being a mere voluntary payment.

*Askew & Mather,* for plaintiff in error.

*Henry Reeves,* contra.

HINES, J. (After stating the foregoing facts.) Before the bank could levy its execution against Grant upon the lands in dispute, the same having been conveyed by Grant to the mortgage company, previously to the rendition of the bank's judgment, to secure an indebtedness of Grant to the mortgage company, it would have to take up such debt of the defendant to said company. Until this was done there was no leviable interest in Grant in these lands which could be reached by the bank's execution. A judgment against the grantor in a security deed, executed before such judgment was rendered, has no lien upon the land embraced in such deed, which can be enforced by levy and sale, until the title becomes revested by redemption. *Phinizy* v. *Clark,* 62 *Ga.* 623; *Cecil* v. *Gazan,* 65 *Ga.* 689; *Groves* v. *Williams,* 69 *Ga.* 614; *Osborne* v. *Hill,* 91 *Ga.* 137 (16 S. E. 965); *Ashley* v. *Cook,* 109 *Ga.* 653, 656 (35 S. E. 89); *Virginia-Carolina Chemical Co.* v. *Williams,* 146 *Ga.* 482 (91 S. E. 543); *Dickenson* v. *Williams,* 151 *Ga.* 71 (105 S. E. 841).

When the holder of the junior judgment pays to the grantee in the security deed the debt thereby secured, it is the duty of the grantee to convey the property embraced therein to the defendant in fi. fa.; and when such conveyance is made and recorded, such property may be levied upon and sold as the property of the defendant. Civil Code (1910), § 6038. So when the bank redeemed this land, by paying to the mortgage company its debt, it lawfully levied its execution upon these lands, and properly advertised them for sale. If the sale had taken place, the proceeds would have been "applied, first, to the payment of liens superior"

to the claim of the mortgage company, which had been taken up by it; next, to the payment of the money paid by the bank in taking up said claim of the mortgage company; and the balance to the execution under which the property was levied upon and advertised to be sold. Here an ample method is provided for the collection of both debts against the debtor. When the plaintiff in the junior fi. fa. pays off the senior incumbrance, he can proceed to sell the property to pay his own execution, and the debt secured by the senior security deed. He does not have to wait and reduce the latter debt to judgment before he can collect the same. The fact that he afterwards reduces the indebtedness secured by such deed to judgment would not deprive him of the right to enforce its collection by the method pointed out in this statute; nor would the lien of the security deed be displaced by the reduction of such debt to judgment. Under this statute the existence and priority of such lien would not be destroyed by the fact that the holder of the debt secured thereby put the same in judgment. This being so, the purchaser from the vendee in the security deed of the property therein embraced, prior to the general judgment obtained by the holder of the debt thereby secured, would not acquire a title superior to that vested in the plaintiff or his assignee by the payment by him of the secured debt.

The contention that the only lien which the bank obtained on the notes transferred to it by the mortgage company was a general judgment against Grant, and that the only lien which the bank transferred to Reeves was the lien of this general judgment, is not well founded. Even if the bank had to rely upon the general judgment which it obtained upon the indebtedness secured by this deed, the failure to describe the property embraced in the security deed or to refer to the same, either in the pleadings or judgment, did not have the effect of depriving the creditor of the special lien or title created by the security deed, since such lien or title is not fixed by, and derived from, the judgment on the secured debt, and such judgment does not add anything to the force and effect thereof. All that was essential to the enforcement of a special lien in favor of the bank, which had paid the note held by the mortgage company, was the rendition of a general judgment thereon, the conveyance by the mortgage company to the defendant of the lands embraced in its security deed, and proof aliunde that such judg-

ment was rendered upon the secured debt. *McAlpin* v. *Bailey*, 76 *Ga.* 687; *Bennett* v. *McConnell*, 88 *Ga.* 177 (14 S. E. 208); *Maddox* v. *Osborne*, 122 *Ga.* 671; *Spradlin* v. *Kramer*, 146 *Ga.* 396 (91 S. E. 409). When the bank did this, it acquired the lien of the mortgage company upon this land created by this security deed; and the bank likewise acquired the right to levy upon and sell this land under its execution. By thereafter transferring its execution to the plaintiff, the bank put it in the power of the plaintiff to sell this land under its execution, but did not destroy its right to enforce this lien or to have payment of its equitable lien under the security deed from the proceeds of the sale of this land, whenever brought to sale under its execution. The splitting of its rights and the transfer of one to the plaintiff did not have the effect of destroying the other and major right.

When the bank as transferee afterwards reduced the indebtedness of Grant to the mortgage company to judgment, it could transfer the execution issued thereon to the plaintiff; and the latter could levy it upon and sell this land, the mortgage company having already reconveyed it to the defendant for the purpose of enabling the bank to levy its execution against the defendant. The deed from the mortgage company to Grant did not put the title in him, except for the purpose of levy and sale. It was "a mere escrow, except for the purpose of levy and sale." *Dykes* v. *McVay*, 67 *Ga.* 502; *Coleman* v. *MacLean*, 101 *Ga.* 303 (28 S. E. 861). Until sale or the payment of the indebtedness secured by the deed of Grant to that company, the title remained in that company. After the making and recording of the deed from the mortgage company to Grant, for the purpose of levy and sale, the title remained in the former until the debt due that company was paid, whether due to it or its transferee. This being so, that company holds the legal title for the benefit of the owner of the debt. As long as that company owned the debt, it held the title for its own benefit. After it transferred the debt, but not the title, it holds for the benefit of the transferee. *Shumate* v. *McLendon*, 120 *Ga.* 396 (10) (48 S. E. 10). The transfer of notes secured by mortgage or otherwise conveys to the transferee the benefit of the security. Civil Code (1910), § 4276; *Setze* v. *First Nat. Bank*, 140 *Ga.* 603 (79 S. E. 540); *Beall* v. *Patterson*, 146 *Ga.* 233 (91 S. E. 71); *Jordan Mercantile Co.* v. *Brooks*, 149 *Ga.* 157 (99 S. E. 289). Now the

assignee of notes, given by the holder of a bond for title for the purchase-money of land, and transferred by the vendor without recourse, is subrogated to the rights of the vendor, and is entitled to a lien against the land for the purchase money. *Ray* v. *Anderson,* 119 *Ga.* 926 (47 S. E. 205); *Van Pelt* v. *Hurt,* 97 *Ga.* 660 (25 S. E. 489). This being so, the purchaser of this land from Grant, after the bank had paid up the claim of the mortgage company, and the mortgage company had conveyed it to Grant for the sole purpose of enabling the bank to levy upon and sell the land under its judgment, and before the bank obtained judgment on the claim of said company, which had been transferred to it, took the title subject to the rights of the bank under the security deed. The plaintiff, as transferee of both judgments from the bank, succeeded to all its rights and could enforce the same, notwithstanding the title set up by the claimant, the same being subject to both judgments. Both the law and the gospel of righteousness demand this conclusion. The trial judge did not err in rendering judgment in favor of the plaintiff.

> *Judgment affirmed. All the Justices concur.*