33851. RADIO CABS, LIMITED, etc., *et al.* v. TOLBERT, by next friend.

DECIDED MAY 22, 1952.

</div>

*Martin, Snow & Grant*, for plaintiffs in error.

*S. Gus Jones, Neal W. McKenny*, contra.

WORRILL, J. (After stating the foregoing facts.) ■ Special ground 1 of the motion for new trial of Radio Cabs, Limited, and Al W. Gerhardt and special ground 1 of the motion of Roy Hooper complain that the verdict for $2000 on count 2 was so excessive as to show bias and prejudice on the part of the jury towards the defendants. The record discloses that the plaintiff, previously to the conduct of Roy Hooper for which damages were sought in count 2, had sustained at his hands numerous bruises on her right forehead, three or four centimeters in size, a bruise on both periorbital areas around both eyelids and eyes, hemmorrhage into the conjunctiva over the whole part of the left eye, small scratches on her left eye, and numerous other bruises and skinned places on other parts of her body as detailed by the physician who attended her. She testified: That when Hooper drove into the premises of the Cinderella, a road house or drive-in, he turned "right sharp" and put on brakes and she was thrown up against the dashboard, and that her head struck against it "and then he started back again down towards Bill's Tavern, driving just as fast. It hurt my head. I was already bruised up, and it hit those bruises. I had fear for my safety at that time." She testified that when arriving at the roadside at Bill's Tavern and he stopped his car, and she was caused to fall therefrom or fell in getting out, he did not stay to assist her but drove on. It is thus shown that the original bruises on the plaintiff were struck when she was thrown against the dashboard of the cab, and that the conduct of the defendant Hooper was aggravated when he left her on the ground at Bill's Tavern. A verdict of a jury can not be invaded and held to be excessive unless the record itself shows that it was the result of prejudice or bias or gross mistake. Code, § 105-2015; *Holtsinger* v. *Scarbrough*, 71

*Ga. App.* 318 (2) (30 S. E. 2d, 835) ; *Colonial Stores* v. *Coker,* 77 *Ga. App.* 227, 234 (48 S. E. 2d, 150) ; *Saul Klenberg Co.* v. *Mrozinski,* 78 *Ga. App.* 59 (3) (50 S. E. 2d, 247). In an early case, *Lang* v. *Hopkins,* 10 *Ga.* 37, 46, it was well said: "As judges, we are not authorized to substitute our conjectures or apprehensions for the determination of that body on whom the law has devolved the duty of deciding, duly weighing all the circumstances of the case. . . Judges should be very cautious, therefore, how they overthrow verdicts given by twelve men on their oaths, on the ground of excessive damages, upon a matter left so entirely to their discretion, especially where the presiding judge before whom the cause was tried, and who is presumed to have been familiar with all the facts, has refused to interfere. For this court to order a rehearing, under such circumstances, it must be made manifest by *the proof* that the damages were 'flagrantly outrageous and extravagant.' " The record before this court contains nothing which shows that the jury based its verdict on anything but the law and the evidence and the charge of the court, and this court will not presume to the contrary.

Special ground 2 of the motion for new trial of Radio Cabs, Limited, and Al W. Gerhardt complains that there was no evidence to show that at the time the plaintiff entered the cab at Bill's Tavern in the early morning, to be driven to her home in Macon, Roy Hooper was acting for the taxicab company. The evidence mentioned in the foregoing statement of facts is replete with facts to demonstrate the lack of merit in this ground, and it would seem to be unnecessary to repeat it here.

Special ground 3 of the motion for new trial of Radio Cabs, Limited, and Al W. Gerhardt complains that the court erred in failing to charge the jury that, "in considering whether or not the plaintiff at the time complained of in the petition occupied the status of a passenger, they should determine whether, at the time the plaintiff entered the automobile operated by defendant Hooper, the said Hooper was acting within the scope of his employment as a servant of movants and engaged in the performance of his duties for them, or whether he had abandoned the performance of his duties for movants and was then engaged in his own private personal mission." It is contended that the evidence showed that Hooper had abandoned his status as a

driver for the movants after his arrival at Bill's Tavern and never returned to the scope of his employment, but was acting for himself in taking the plaintiff from Bill's Tavern in the early morning and did not and could not, while so acting, make a contract of carriage on behalf of the movants. As hereinabove shown, the jury was authorized to find against the contentions of the movants as to the status of the plaintiff as a passenger in a cab operated by Hooper on behalf of the movants. The court charged the jury: "Now, gentlemen, one of the issues for you to determine is whether or not the plaintiff, at the time referred to in the petition, was a passenger in the cab of the defendant, Radio Cabs, Limited. Now, Code § 18-201 gives the definition, the legal definition of a passenger. It provides that a passenger is one who travels in some public conveyance by virtue of a contract, express or implied, with the carrier as to the payment of the fare or that which is accepted as the equivalent therefor. The prepayment of fare is not necessary to establish the relation of passenger. While a carrier may demand prepayment of fare, if by its permission persons enter his vehicle with the intention of being carried, an obligation to pay fare is implied on the part of the passenger and the reciprocal liability of the carrier arises. [The court next charged as to the contentions of the plaintiff that she was a passenger of the movants.] . . I charge you that if you find that the plaintiff was a passenger, and that at the time referred to in the petition there existed between her and the defendants, Radio Cabs, Limited, a contract of carriage, then the plaintiff would not only be entitled to be protected against the negligent acts of the defendant and its servants, if there was such negligence and if Roy Hooper was its servant, resulting from the omission to perform its duty to the plaintiff as a passenger, if there was such omission, but the plaintiff was likewise entitled to be protected against the wanton and wilful assault upon her person by the servant of the company, if there was such, during the continuance of the relation instituted by her contract of carriage with the defendant, Radio Cabs, Limited, if there was such a contract, and if Hooper was its servant at such time and place. Now, one of the issues for the jury to determine is whether or not the plaintiff was a passenger in the cab of the defendant company at the time referred to in the

petition, as defined by the provisions of Code § 18-201, which I have just read to you, as applied to the facts of the case as you find them to be. If you determine that the passenger was not a passenger at the time and place referred to, then you would not be authorized to find a verdict against the defendant, Radio Cabs, Limited, under either count. . . If you should find from the facts as you find them to be that the plaintiff was not a passenger within the meaning of the statute, and you find that the defendant Roy Hooper had carnal knowledge of her, forcibly and against her will, then and in that event you would be authorized to find a verdict in favor of the plaintiff against the defendant Roy Hooper alone on the first count. On the other hand, should the jury determine that at the time and place referred to in the petition the plaintiff was a passenger of the defendant cab company, as defined by the provisions of Code § 18-201, which I have read to you, and under the facts of the case as you find them to be, and you further find that the defendant Roy Hooper at the time was the servant of defendant Radio Cabs, Limited, then I charge you that the law of this State provides that a carrier of passengers must [use] extraordinary diligence to protect the lives and person of his passengers, but is not liable for injuries to them after having used such diligence." It was the contention of the defendants that the relation of carrier and passenger never existed, in so far as their answers were concerned, and it was only in the brief of counsel that it was conceded that such relation existed at the time the plaintiff was being driven to Bill's Tavern, it being contended that such relation was there abandoned. The charge fully covered the issue made by the pleadings and the evidence, and if a charge specifically dealing with the question of the relation of the plaintiff and the defendants on the return trip to Macon was desired, a timely written request therefor should have been presented. No merit is shown in this ground.

Special ground 4 of the motion for new trial of Radio Cabs, Limited, and Al W. Gerhardt and special ground 2 of the motion for new trial of Roy Hooper complain that the court erred in allowing the plaintiff to testify that she lived on a farm of about 75 acres, it being contended in the motion, though not at the time of the examination of the plaintiff, that the testimony

was prejudicial to the movants, in that it caused the jury to consider that the plaintiff was a poor country girl living on a small farm, whereas Radio Cabs, Limited, was a partnership operating 12 or 14 taxicabs in the City of Macon, and the jury were thereby led to believe that they might legitimately contrast the poverty of the plaintiff with the comparative wealth of the movants in arriving at their verdict. The ground of the motion shows from the recited colloquy attendant upon the examination of the plaintiff that the objection first made was to an answer that the farm was "pretty big," and was as follows: "I move to exclude that question [How big is your farm?] and the answer on the ground that it is not material how big the farm is. It has no bearing. This woman is 21 years old. Her father has no interest in this case." The objection was overruled and the question was restated and the plaintiff answered, "Well, I don't know exactly, but I think it is about 75 acres." Thus it will be seen that there was no objection at the time of the examination that the answer was prejudicial for any reason, and such objection can not be considered where it was made for the first time in the motion for new trial. Nor was the answer objectionable as being immaterial for any reason urged. The record shows that prior to such inquiry of the witness she had been questioned by the movants' counsel as to visiting several drive-in places since her injuries and she testified: "The first place I went to when I got back to Macon was not Bill's Tavern. It was about two months before I went out there. Since then I have been back to these night spots around Macon but not regular." The line of questioning was obviously to attack the credibility of the plaintiff, and thereafter her counsel adduced the testimony that since she left the hospital she had been unable to do anything except to assist on her father's farm and that there was no one to tend it except her father, his brother who was not well, and her two small brothers and herself. She stated that she did hoeing, chopped cotton and picked cotton, and did most of the housework. It was in connection with such testimony that she was asked as to the size of the farm and answered, "I think it is about 75 acres." In view of the apparent effort to compromise the plaintiff, it was proper for her counsel to elicit from her testimony as to her wholesome and legitimate service

on the farm of her father where she made her home, and to supplement the statement of her activities by showing that only her father, his brother, her two small brothers, and herself worked upon the farm which was in size about 75 acres. The plaintiff had previously referred to the farm as "big," rather than small, whatever be the true characterization of "75 acres," and testimony as to the size of the farm, whether big or small, was merely descriptive, and could not be said to be irrelevant in connection with the narration as to her daily chores, all of such testimony being pertinent and contradictory to any theory that since leaving her employment with the telephone company she was an habitue of road houses or drive-ins in the vicinity of Macon.

Special ground 5 of the motion for new trial of Radio Cabs, Limited, and special ground 3 of the motion for new trial of Roy Hooper complain of the following charge of the court: "The jury would be authorized to find that the defendant, Roy Hooper, did commit the act of rape if they are satisfied that he did so by a preponderance of the evidence from all the evidence, that of Miss Tolbert [the plaintiff] and the corroborating evidence, if any." It is contended by the movants that by the use of the words "if any" the charge was confusing and misleading to the jury, in that the jury were led to believe that they would be authorized to find that Roy Hooper committed the act of rape if they were satisfied from the evidence of the plaintiff alone that he did so, even though her testimony might not be corroborated by other evidence, and that such charge had the effect of withdrawing a previous correct instruction. The court had correctly charged that, before the jury would be authorized to find that the plaintiff was raped by Roy Hooper, there must be independent evidence which corroborates that of the plaintiff that she was so raped, and the charge complained of did not have the effect, as asserted by the movants, of withdrawing such prior correct instructions. By the use of the words "if any," the court made it clear to the jury that it did not mean to express any opinion as to whether or not there was any corroborating evidence. The charge merely informed the jury that they would be authorized to find that Roy Hooper committed the act of rape if they were satisfied by a preponderance of the evidence

that he did so, and that such preponderance must be a preponderance of the evidence of the plaintiff *and* corroborating evidence, and to assure the jury that the court did not mean to express any opinion as to whether or not there was corroborating evidence for the jury to consider, and that such a finding was for the jury, the court added the qualification "if any." This excerpt was in fact the concluding part of the court's instruction on proof of carnal knowledge, and did not have the effect of withdrawing what went before but of adding to it, the full instruction being as follows: "I charge you that the plaintiff must further prove that the carnal knowledge, if any, was accompanied by force and against her will and without her consent. I charge you that you would not be authorized to find that the defendant Roy Hooper raped the plaintiff as alleged upon the unsupported testimony of the plaintiff. Before you would be authorized to find that the plaintiff was raped by Roy Hooper as alleged there must be other evidence, independent of that of Miss Tolbert, corroborating her testimony, sufficient to connect Roy Hooper with the act, and all the evidence taken together must satisfy your minds by a preponderance of the evidence that the act was committed as alleged. It is for the jury to determine whether the testimony of Miss Tolbert has been so corroborated or not. It is not necessary, however, that the corroborating evidence, *if any*, should of itself be sufficient to show that Roy Hooper did commit the act as alleged. The jury would be authorized to find that the defendant, Roy Hooper, did commit the act of rape if they are satisfied that he did so by a preponderance of the evidence, from all the evidence, that of Miss Tolbert and the corroborating evidence, *if any*." (Italics ours.) Taken in its proper context, it could not be said that the jury were confused and misled as contended. Special ground 6 of the motion for new trial of Radio Cabs, Limited, and special ground 4 of the motion for new trial of Roy Hooper complain of the following charge of the court: "The plaintiff seeks to recover for physical and mental pain and suffering, the humiliation she alleges she suffered at the time and place referred to, which she says she is still suffering and which she says she will suffer throughout her lifetime." It is contended that the charge led the jury to infer that the plaintiff was seeking to recover

for humiliation she may have suffered, not only under count 1 as alleged, but also under count 2, whereas in· the latter count no humiliation or embarrassment was claimed, it being alleged that, "As a result of the negligence and conscious indifference of said taxicab driver, petitioner did then suffer, does now suffer, and will continue to suffer for the balance of her normal life excruciating mental and physical pain." On the trial the plaintiff testified that the assault and injuries suffered by her caused her a great deal of "embarrassment" among her friends and acquaintances, and that she was too "embarrassed" to go back to the telephone company. "Embarrassment" as used by the plaintiff could reasonably be taken by the jury as the substantial equivalent of "humiliation," though there be a technical nicety of distinction in meaning between the two words. Since the testimony was admitted without objection, it was not reversible error for the court to charge thereon, because had an objection been made to such testimony the petition could have been amended to cover it. *Gainesville & Northwestern R. Co. v. Galloway,* 17 *Ga. App.* 702 (4) (87 S. E. 1093) ; *West v. Rosenberg,* 44 *Ga. App.* 211 (4) (160 S. E. 808) ; *Ocean Steamship Co. v. Williams,* 69 *Ga.* 251 (4) ; *Grice v. Grice,* 197 *Ga.* 686, .699 (30 S. E. 2d, 183) ; *Waters v. Waters,* 195 *Ga.* 281, 286 (24 S. E. 2d, 20) ; *Irvin v. Locke,* 200 *Ga.* 675, 680 (38 S. E. 2d, 289).

■ The general grounds of the motions for new trial are not argued or insisted upon except that it is stated that, as asserted in two of the special grounds, the amount of the verdict under count 2 is so excessive as to show bias and prejudice in the minds of the jury; and that it was not shown that on the return trip to Macon from Bill's Tavern the driver of the taxicab was acting for and on behalf of the other defendants. These contentions have been disposed of adversely to the movants. The plaintiff being, as the jury was authorized to find, a ·passenger in the taxicab operated for the other defendants at the time she was raped by Roy Hooper, as the jury was further authorized to find, she was entitled by reason of her contract of passenger and carrier, not only to be protected against the negligent acts of the driver of the taxicab resulting from his omission to perform the duty of the defendants to their passengers, but was also entitled to be protected against the wanton and wilful act of

violence wrongfully committed on her person by the said servant of the taxicab company during the continuance of the relation as made by the contract. *Co-Op Cab Co.* v. *Singleton,* 66 *Ga. App.* 874, 876 (19 S. E. 2d, 541). See also, as to the duty owed by a carrier to its passengers, *Southeastern Greyhound Corp.* v. *Graham,* 69 *Ga. App.* 621 (26 S. E. 2d, 371). The evidence amply authorized the plaintiff to recover under both counts of the petition. In fact, the driver of the taxicab did not deny the rape and beating as testified by the plaintiff, and also his negligent conduct in driving her home thereafter in the taxicab, stating only that he was drunk and did not remember anything that occurred after he left Bill's Tavern with the plaintiff in his car.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*