## 47581. JONES et al. v. SPINDEL.

CLARK, Judge. A verdict of $82,155.00 for plaintiff has brought this case for its third appearance in this court. The law points involved are complicated to the extent that there are forty-one assignments of error. Both lawyers have ably argued legal questions contained in such enumerations in extensive briefs.[1] These briefs have been of great help in our deliberations.

Our work has been considerably simplified by reason of the "law of the case" having been established on the two previous appeals in *Jones v. Spindel,* 113 Ga. App.

---

[1] Contrast our present day practice of voluminous briefs with that submitted by Robert Toombs to the Supreme Court of Georgia containing only four words: "Marriage—seizin—death—dower." (History of the Supreme Court of Georgia, (1948) page 260).

191 (147 SE2d 615) and 122 Ga. App. 390 (177 SE2d 187) to which we will make reference hereafter.[2]

The case was submitted to the jury on two counts with the first count seeking to recover the value of plaintiff's services based on use of his drawings. The other count was for damages claimed to have been sustained by an alleged conversion by defendants to their own use of plaintiff's property. The jury found there was a conversion and added exemplary damages and attorney fees. Their verdict, made the judgment of the court, was itemized as follows: "Plans and interest $34,155; punitive damages $25,000; attorneys fees $23,000; totaling $82,155."

As the evidence presented for the defendants consisted of denials of the version presented by plaintiff and which if accepted by the jury would have supported a verdict for defendants, we deem it sufficient to state a summary of the plaintiff's case: Prior to meeting defendants, Spindel, a licensed professional engineer, had prepared certain drawings on which appeared the following statement: "Design by office of Gilbert D. Spindel, P. E., Consulting Design Engineer, Reg. Pro. Eng. D. C., S. C., Georgia, National Bureau Cert. Qual. 1970. All rights for these plans reserved by Modular Components, Inc., and G. D. Spindel, Copyright by G. D. Spindel." They were for use through Modular Components, Inc. in constructing what are generally known to the layman as prefabricated houses. These plans were furnished to defendants for use in obtaining building permits and mortgage commitments. Plaintiff submitted evidence showing that his plans were either

[2]Certiorari was granted by the Supreme Court in the latter case but was dismissed as having been improvidently granted with the explanation that the only question there presented was the alleged error of the Court of Appeals in granting a new trial by reason of excessiveness of exemplary damages and attorney fees. *Spindel v. Jones,* 227 Ga. 264 (180 SE2d 242).

traced or redrawn with minor changes omitting the Spindel legend and used by defendants without his authorization for construction of an appartment project consisting of 64 units at a cost of $460,000. There was no federal copyright obtained as plaintiff relied solely on a common law copyright.

1. The herculean task confronting us has been lightened by the opinions rendered in the two previous decisions which established the "law of the case." As to those matters we need not indulge in redundant rhetoric. Both appellants and appellee recognize ". . . that any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." Code Ann. § 81A-160 (h). They differ as to the rulings which were made. Because "a court may take judicial notice of its own records in an immediate case before it" (*Minor v. Ray,* 127 Ga. App. 1, 2 (193 SE2d 41)), we have obtained the records of both appeals from the archives. Our examination of the records, transcripts, and briefs in those two files confirm this court has already passed on a number of matters which have been again argued on the instant appeal. Such rulings are not to be re-litigated. *Southern R. Co. v. Overnite Transportation Co.,* 225 Ga. 291 (168 SE2d 166); *Bailey v. Dobbs,* 126 Ga. App. 545 (191 SE2d 293).

The first appeal (*Jones v. Spindel,* 113 Ga. App. 191, supra), limited its holding to a cause of action being stated for acts done in pursuance of a conspiracy. In the second appeal (*Jones v. Spindel,* 122 Ga. App. 390, supra), this court specifically covered a number of questions which we show by quotations from that opinion:

(a) It was proper to include in the charge "a statement of the claim of the plaintiff for exemplary damages and attorney's fees and the substance of Code § 105-2002,

accompanied by an explanation of the meaning." P. 390.

(b) It was proper to charge the jury with reference to consideration of an award of attorney fees. P. 391.

(c) "It clearly appears that Spindel had a common-law copyright in the plans. . . and the unauthorized use of the plans by the defendants as disclosed by the proof is shown to be entirely outside the scope of the arrangement with Modular Components." P. 391.

(d) "With respect to interest, the trial judge correctly instructed the jury that 'in an action for conversion such as has been set up by the plaintiff in his other count, the measure of damages is the fair reasonable market value of the property converted as of the date of conversion, plus interest.' " P. 393.

(e) If the evidence warrants, then the verdict may exceed the amount claimed as ad damnum in the complaint. P. 393.

(f) "The interest is to be included in the verdict as additional damages, and not as interest eo nomine, because conversion is an ex delicto action." P. 393.

A reading of the transcript of evidence in the first trial shows that substantially the same evidence was presented at both trials. Under this situation the items that we have recited as being the "law of the case" and binding upon this subsequent appeal apply. *Medlock v. Allison,* 224 Ga. 648 (164 SE2d 112); *Srochi v. Kamensky,* 121 Ga. App. 518 (174 SE2d 263); *Standard Oil Co. v. Harris,* 120 Ga. App. 768 (172 SE2d 344). Therefore, we will not plow that ground again in this opinion.

2. Although the first two appeals established the law of the case as to plaintiff having the right to have the jury determine (a) if defendants by their acts pursuant to a conspiracy caused plaintiff damages as pleaded, (b) that Spindel possessed a common law copyright in his plans, (c) an unauthorized use thereof, if shown, constituted a conversion with the right to recover

damages, both actual and punitive, along with interest from the date of conversion and attorney fees, other questions remain for consideration on this appeal. The first of these is whether the verdict is excessive to the extent of showing bias or prejudice. When the previous verdict was reversed on this ground, the law of the case was not created on this point because the litmus test of bias or prejudice necessarily must be applied anew to the evidence as presented upon the second trial. Because of the closeness of amounts ($85,000 contrasted with the instant $82,155) we have given special study to this problem. Despite the evidence here being substantially the same in many respects as that of the first trial, we must measure the verdict according to those principles contained in the cases that have considered Code § 105-2015 which provides: "The question of damages being one for the jury, the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." The standard was stated in *Realty Bond &c. Co. v. Harlay,* 19 Ga. App. 186 (91 SE 254) at page 187 in these words: "Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear 'exorbitant,' 'flagrantly outrageous,' and 'extravagant.' 'It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush.' It must carry its death warrant upon its face." In accord are *St. Paul Fire &c. Ins. Co. v. Dillingham,* 112 Ga. App. 422 (145 SE2d 624); *Hein v. Morgan,* 112 Ga. App. 535 (145 SE2d 780); *Fields v. Jackson,* 102 Ga. App. 117, 119 (115 SE2d 877); *Western & Atlantic R. v. Burnett,* 79 Ga. App. 530, 540 (54 SE2d 357).

Proper application of these standards should be made

separately as to each item of damages in the instant verdict. Accordingly, we deal with each as follows:

(a) Actual damages. The trial judge instructed the jury if they found a wrongful conversion to have occurred, "the measure of damages is the fair market value of the property converted, as of the date of conversion plus interest from that time until date figured at the rate of seven per cent." (T. 435) In accordance with an instruction from the judge, who thereby complied with the Court of Appeals directive, the two items of fair market value and interest were combined rather than segregated as had erroneously been done by the previous jury. Subtracting interest computed from Labor Day 1962 to January 1972 from the combined figure of $34,155 leaves an amount well within the range of the evidence, plaintiff having placed a value of $25,000 (T. 95) and his witness a figure of $20,700 (T. 185).

(b) Attorney fees: On the previous appeal this court ruled the amount of $25,000 to be "substantially in excess of what should be regarded as reasonable and adequate." Since then, however, there was considerable time and effort consumed by the attorneys in seeking to certiorari the previous appeal to the Supreme Court, followed by a retrial consuming three days. Plaintiff's counsel testified as to the amount of time he devoted which at the recommended Atlanta Bar Association fee schedule of $35 per hour would authorize an award of $17,500 to $21,000 (T. 239). Another witness, an independent attorney, stated "in view of the time consumed and the probable complexities that you outlined that a reasonable attorney's fee would be somewhere in the neighborhood, I would say, $18,000 to perhaps $22,000, $23,000." (T. 248) We recognize the jury adopted this higher figure of $23,000 for attorney fees, but since it was within the range of the evidence, we cannot say this alone indicates bias or prejudice. We

do not regard our approval as a contradiction of the previous ruling of this court because of the additional labors to which we have referred. Our holding does not take into consideration the extensive time spent by counsel in connection with this third appeal. See *Travelers Ins. Co. v. Sheppard,* 85 Ga. 751, 793 (12 SE 18).

(c) Exemplary damages: On the first appeal punitive damages were set at $29,170, which this court found to be "indicative of an undue bias for the plaintiff and against the defendant." The instant jury awarded $25,000 as exemplary damages. Plaintiff's counsel have presented a theory which we regard as proper by suggesting measurement of punitive damages should be on the basis of ratio to actual damages. The exemplary damages award is $9,000 less than the actual damages. Appellate courts have upheld exemplary damages which were in excess of a 1 to 1 ratio. Among these are *N. A. A. C. P. v. Overstreet,* 221 Ga. 16 (142 SE2d 816)—ratio of 1.4 to 1 of punitive to actual damages; *Aderhold v. Zimmer,* 86 Ga. App. 204 (71 SE2d 270)—a 3 to 1 ratio; *Allstadt v. Johnson,* 97 Ga. App. 584 (103 SE2d 683)—a 3 to 1 ratio; and *King v. Towns,* 102 Ga. App. 895 (118 SE2d 121)—a 12 to 1 ratio. When one considers that punitive damages both as to allowance and amount are generally jury questions with which appellate courts are reluctant to interfere we do not have the temerity to propose that our ivory tower evaluation should be substituted for that of 24 jurors plus the two trial judges who as "the 13th juror" have decided the conduct of these defendants was such that exemplary damages of not less than $25,000 should be awarded "either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." Code § 105-2002. In reaching our determination that there has not been any bias or

prejudice affecting the size of each element composing this verdict we must express our concurrence with the view expressed by the able trial judge, Honorable Sam Phillips McKenzie, in his charge to the jury where he complimented counsel for both sides in stating the case was "well tried, thoroughly tried." (T. 434) Moreover, we had the benefit which is somewhat unusual of reading the arguments made to the jury by both lawyers from the transcript, which enabled us to consider fully whether matters contained in their orotund ornamental oratory affected the size of the verdict. (T. 434)

While any number of verdicts could have no sacredness where the law and the evidence are clearly against a recovery, *Neely v. Sheppard,* 185 Ga. 771, 774 (196 SE 452), yet, if the law, whether it be the law in general or the law of the case, authorizes a recovery and there is evidence to support the verdict, and nothing in the record shows that it resulted from gross mistake, undue bias or prejudice, or from other corrupt motives, this court is not authorized to set it aside upon the ground that it is excessive. *Lamb v. Davis,* 20 Ga. App. 240 (5) (92 SE 1009). This is especially true where, as here, there has been a second trial of the issue upon substantially the same evidence, with a very similar result. *Atlantic C. L. R. Co. v. McElmurray Bros.,* 16 Ga. App. 759 (2) (86 SE 48); *Knight v. Northey,* 21 Ga. App. 46 (1a) (93 SE 535); *Cotton States Life Ins. Co. v. Merritt,* 59 Ga. 664. The presumption in favor of the verdict strengthens with the subsequent trial and verdict, and the indication of error weakens. To require a second reversal the error must appear clearly and without doubt. It is strengthened, too, by reason of the fact that there is no substantial increase in the verdict on the second trial. Compare *Powell v. Augusta & S. R. Co.,* 77 Ga. 192 (14) (3 SE 757), and especially since the second verdict has the approval of the trial judge.

*Atlanta Coca-Cola Bottling Co. v. Childers,* 63 Ga. App. 665 (11 SE2d 831). Cf. *Southern R. Co. v. Alexander,* 62 Ga. App. 57 (7 SE2d 747).

When this court reversed in *Jones v. Spindel,* 122 Ga. App. 390, supra, we were persuaded that this first verdict had resulted from gross mistake or bias, and was thus excessive, because attorney fees of $10,000 had been sought in the petition and we thought the evidence in that record scarcely authorized more, though the verdict was for $25,000 for this item, and likewise, plaintiff had sought $15,000 damages for the use of his plans, whereas the jury awarded $20,700. On the second trial there were amendments to the petition increasing the ad damnum claims along with some difference in the evidence (though, in the main, it was substantially the same), so that the increased amounts no longer indicate the presence of bias, prejudice or mistake in the manner as appeared on the former appeal.

"When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive. [Cits.]" *Yale & Towne v. Sharpe,* 118 Ga. App. 480, 492 (164 SE2d 318). See also *Radio Cabs v. Tolbert,* 86 Ga. App. 181, 188 (71 SE2d 260) and *Kiker v. Davis,* 103 Ga. App. 289, 290 (118 SE2d 861).

3. Defendants contend plaintiff cannot recover because his activities constituted a violation of our statute concerning licensing of architects codified as Ch. 84-3 of our Annotated Code. If this contention were upheld then there would be no legal relief available since the conduct would be either malum prohibitum or malum in se (*Howell v. Fountain,* 3 Ga. 176 (46 AD 415); *Jones*

*v. Dinkins,* 209 Ga. 808 (76 SE2d 489)) and be within the mandate that "polluted hands shall not touch the pure fountains of justice." *Bugg v. Towner,* 41 Ga. 316, 320. Defendants argue that plaintiff's plans or drawings involved a "group housing project" or multi-family dwellings which they say can be prepared only by a registered architect under the provisions of our licensing statute codified as Ch. 84-3. Plaintiff was a registered professional engineer. It is a fact of industrial life that there are many occasions when the services performed by an architect and those by an engineer overlap. This is recognized both by court decisions and in our statutes. Usually, as is shown in the annotation in 82 ALR2d 1013, the problem arises under licensing requirements and as the annotator states at page 1026 "the conclusion generally reached is that where, in the case of an engineer, the services in the field of architecture are incidental to the project as a whole, and the latter is an engineering project, no violation of the statutes licensing architects occurs, or vice versa." That article cites *Flatauer Fixture &c. Corp. v. Garcia & Assoc.,* 99 Ga. App. 685 (109 SE2d 818) where this court ruled the services performed were comprehended within those authorized as a licensed engineer including preparation of plans and specifications for a building.

Statutory recognition of the overlapping is contained in Code Ann. § 84-321 in the Chapter dealing with architects and in Code Ann. § 84-2137 in the Chapter stating the licensing requirements for "Engineers and Land Surveyors." Pertinent portions of the first provide "Nor shall anything in this Chapter be held to prevent registered professional engineers or other employees or subordinates under their responsible supervising control from performing architectural services which are purely incidental to their engineering practice: Provided, however, that

registered architects or their employees or sub-ordinates under their responsible supervising control may perform engineering services which are purely incidental to their architectural practice." Code Ann. § 84-321. The reciprocal provisions in § 84-2137 state: "Nothing in this Chapter shall be construed as excluding a qualified registered architect from such engineering practice as may be incident to the practice of his profession; *or as excluding a professional engineer registered under the provisions of this Chapter, from such architectural practice as may be incident to the practice of professional engineering.*" (Emphasis supplied.)

Jurisdictions with licensing laws similar to Georgia which have upheld overlapping architectural work done by professional engineers are Florida (Verich v. Fla. State Bd. of Architecture, 239 S. 2d 29); Nevada (Sardis v. District Court of Washau County, 460 P. 2d 163, 169) and Alabama (State Board for Registration of Architects v. Jones, 267 S. 2d 427).

It should be noted plaintiff at no time represented himself to be an architect, which representation is forbidden by statutes that do recognize overlapping services of the two professions.

Pertinent to this division is Special Ground 31, R. 107, wherein there is questioned the correctness of permitting an expert witness to testify that services performed by architects and by professional engineers frequently overlap. This was not error as our statutes from which we have quoted recognize such overlapping does in fact exist.

4. Another enumeration of error (Special Ground 30, R. 102) deals with an objection to testimony by Gilbert D. Spangler, an employee of Preferred Homes, Inc., who testified he was given Spindel's plans by a co-employee with instruction to redraw them on Preferred Homes, Inc. tracing paper containing that firm's name and to

omit the names of Spindel and Modular Components. The objection was that this was hearsay, not being in presence of defendants. The trial judge correctly overruled the objection and concomitant with his ruling explained to the jury the limited purpose for which it was admitted, namely to explain the conduct of the witness. See Code § 38-302; *Joiner v. Joiner,* 225 Ga. 699 (3) (171 SE2d 297); *Bowen v. State,* 225 Ga. 423 (169 SE2d 322); *Thruway Service City v. Townsend,* 116 Ga. App. 379 (3) (157 SE2d 564); *Sisk v. Carney,* 121 Ga. App. 560, 562 (174 SE2d 456).

5. Another evidentiary question is presented on this appeal. When the instant suit was first filed in 1963 defendants were the present three appellants, Jones and Young, who were stockholders and officers of the third defendant, Curtis Homes, Inc., the owner of the project, along with Preferred Homes, Inc., a prefabricator who built the 64 units which served as the subject matter of this suit and whose employee had traced or copied Spindel's plans. At the time of the first appeal when Preferred Homes, Inc. was a party this court ruled that each of the parties who acted pursuant to the alleged conspiracy would be individually liable for such damages as might be proved were caused by their acts. After that first appeal Preferred Homes, Inc. was declared bankrupt and Spindel sought to file a claim before the Referee in Bankruptcy but his claim was disallowed. Defendants contend this disallowance constituted an adjudication of "No claim or right of action against Preferred Homes, Inc. and therefore there could be no claim against the other defendants." The trial judge declined to permit defendants to introduce an exemplified copy of the bankruptcy proceedings. He ruled correctly because "The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done," as is stated on page 193 of the first

opinion in 113 Ga. App. Each of the individual defendants was severally responsible for their respective acts. "As to parties defendant in tort, one, or any, or all of several joint wrong-doers may be sued." *Wall v. Wall,* 176 Ga. 757 (1) (168 SE 893). "Where several persons conspire to defraud another, one or all of the wrong-doers may be sued, 'proof of the conspiracy renders the act of one in deceiving and defrauding the injured party the act of all.' " *Grant v. Hart,* 192 Ga. 153 (5) (14 SE2d 860). See also *Wilson v. Appalachian &c. Hardware Co.,* 220 Ga. 599 (140 SE2d 830).

6. A considerable portion of appellants' argument is devoted to Federal copyright law with special reference to consideration of an "inchoate statutory copyright." The opinion in the second appeal says at page 391 that "it clearly appears that Spindel had a common-law copyright in the plans."

This established the law of the case. The transcript of the trial sub judice shows it to have been presented upon this theory of a common law copyright. We do not agree with the contentions made by appellants that the facts brought this case within the doctrines then and now argued under federal statutory copyright law. We decline to accept appellants' thesis that "The Federal Constitution and laws have pre-empted the field" (Brief, p. 16), and therefore we regard the action to have been based correctly on conversion rather than infringement. Our ruling is in accord with the "law of the case" which was followed by the trial court.

7. Both sides have presented contrary views on the legal effect of Spindel's plans being made public through filing with governmental authorities in order to obtain a building permit, in being authorized for use in obtaining mortgage commitment, by being made available to other builders through Modular Components, Inc. with which Spindel was associated,

and by the legend on the plans reading "Copyright by G. D. Spindel." Did these various actions constitute "general publication" which placed them in the public domain or were they "limited publication" which preserved Spindel's common law copyright? Diligent counsel and this court have been unable to find any Georgia law on this subject which indicates its esoteric nature. Such statement of sparseness of authority is confirmed by a 1964 decision of the Supreme Judicial Court of Massachusetts, Edgar H. Wood Assoc. v. Skene, 347 Mass. 351, 357 (197 NE2d 886), where it is said: "Only six cases are in point from other jurisdictions, none by a court of last resort. They are in conflict and so is such literature as exists on the subject." The paucity of adjudications is further confirmed by the annotation in 77 ALR2d 1048 on the subject which is only three pages in length although it follows a California case, Smith v. Paul, 174 Cal. App. 2d 744 (345 P2d 546, 77 ALR2d 1036), covering 12 pages. The Massachusetts and California tribunals ruled that the act of the architect in filing plans with a governmental authority to secure official approval was a publication for a limited purpose which did not cause loss of common law copyright. This is a view with which we agree.[3] In the words of Justice James K. Hines,[4] "Both the law and the gospel of righteousness

---

[3]Compare this concurrence with the legend told in our Ogeechee River area of a Savannah attorney who cited law from a textbook to a jury in a neighboring rural county. His case was lost when opposing local counsel replied: "This book was published by MacMillan & Co., Boston, Mass. Do you want damyankees telling us Georgia Crackers what our law should be?"

[4]Justice Hines began his legal career in Savannah. When appointed to the Supreme Court in 1922 he was 69 years old. He served for 10 years until his death. His

demand this conclusion." *Carlton v. Reeves,* 157 Ga. 602, 608 (122 SE 320). The trial judge charged correctly in stating "in order to terminate a common law copyright, the publication must be such as to justify the belief that it took place with the intention of rendering the work common property, while a limited publication is one which communicates the knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public." There was no error in the charge on this subject.

8. A motion for mistrial was made by defense counsel (Special Ground 21, R. 101) by reason of plaintiff's attorney during a colloquy in the presence of the jury having made a statement which he contended was prejudicial. The record shows the jury was removed for the period during which this statement and its impact was discussed. "It is well settled that in dealing with motions for mistrial the discretion of the trial court will not be disturbed unless it is abused to the extent that the grant of a mistrial is essential to the preservation of the right to a fair trial. [Cits.]" *Fievet v. Curl,* 96 Ga. App. 535, 537 (101 SE2d 181). See also *Royal Crown Bottling Co. v. Bell,* 100 Ga. App. 438, 440 (111 SE2d 734). There was no abuse of discretion by the trial judge in denying the mistrial motion.

9. At the conclusion of plaintiff's evidence defendants made a motion which movant described as "an involuntary nonsuit" that was overruled. Subsequently defendants moved for a judgment notwithstanding the verdict on the basis of this motion. Appellee's counsel argues this court should not consider

---

courage in defying the Ku Klux Klan in the hey-day of its power was noteworthy. "His overwhelming election in 1926 over the bitter opposition of this organization was the response of the people to this appeal and marked the end of the power of this secret organization." See Memorial in 178 Ga. 881, 885.

such motion non obstante veredicto because the prerequisite for a judgment n. o. v. is a motion for directed verdict which he argues Code Ann. § 81A-150 (b) says can be made only "at the close of all the evidence." We disagree. As stated by our Supreme Court in *Marshall v. State,* 229 Ga. 841 (1), "There is no magic in mere nomenclature, even in describing pleadings. *Girtman v. Girtman,* 191 Ga. 173 (4) (11 SE2d 782). Under our rules of pleading substance, not mere nomenclature, controls. *McDonald v. State,* 222 Ga. 596 (1) (151 SE2d 121)." We, therefore, have regarded it as incumbent upon us to review each of the points made by the motion for judgment n.o.v. Because we have already discussed every point therein in the preceding portions of this opinion excepting those on which the law of the case was established by the two previous appeals, we deem it unnecessary for reiteration. We find there was no error in overruling the motion for judgment notwithstanding verdict.

10. Enumerations numbers 6 through 24 deal with the trial judge's refusal to charge seventeen written requests submitted by defendants. Counsel for appellee took the position in their written briefs that we could not consider these enumerations under the rulings of this court in *U. S. Security Warehouse v. Tasty Sandwich Co.,* 115 Ga. App. 764 (1) (156 SE2d 392); *Fidelity-Phenix Ins. Co. v. Mauldin,* 123 Ga. App. 108, 111 (179 SE2d 525); *Nobel v. Kerr,* 123 Ga. App. 319 (2) (180 SE2d 601). On January 4, 1973, the Supreme Court of Georgia in *Continental Cas. Co. v. Union Camp Corp.* 230 Ga. 8 (2) disapproved these cases, and ruled that "Where the trial court refuses to instruct the jury in accordance with a timely submitted written request, in order to secure a review of that action on appeal it is unnecessary for the party to state grounds of objection to such refusal at the conclusion of the charge."

By reason of this holding by our Supreme Court we have

now undertaken to consider each of these enumerations of error. We find that the rejected seventeen written requests involved legal principles with which we have heretofore dealt in this opinion adversely to appellants.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*

ARGUED OCTOBER 6, 1972—DECIDED JANUARY 4, 1973— REHEARING DENIED FEBRUARY 6, 1973—

*George G. Finch,* for appellants.

*Webb, Parker, Young & Ferguson, John Tye Ferguson, Paul Webb, Jr.,* for appellee.