## 36793. SOUTHERN RAILWAY COMPANY *et al. v.* THOMPSON.

Decided September 9, 1957.

*Matthews, Maddox, Walton & Smith, Oscar M. Smith,* for plaintiffs in error.

*Smith, Field, Doremus & Ringel, Sam F. Lowe, Jr., DeJongh Franklin, C. B. McGarity,* contra.

Felton, C. J. ▮ We will consider several special grounds of the amended motion together. The collision occurred within the corporate limits of Hiram, Georgia. The plaintiff sought to prove the existence of a municipal ordinance restricting the speed of trains within the corporate limits to a speed of fifteen (15) miles per hour or less by the introduction of a certificate of the Clerk of Hiram. That certificate is as follows:

"Georgia, Paulding County.

"Certificate of the Clerk of the City of Hiram, Georgia.

" 'Town of Hiram. Hiram, Ga.

Minutes for the Year 1931. , 6-1-31.

Met in regular session. Mayor and all members of council present.

———

C. B. McGarity, Atty., was invited to meet with Mayor and Council for the purpose of discussing a revision of the town charter and ordinances and after a full discussion the council

voted to make certain changes in the charter and ordinances and authorized said attorney to draw or make such changes, after same has been done, the new charter and ordinances are to be printed in book form.

There being no other business being on hand council adjourned until next regular meeting.

Adopted 7-6-31 J. M. Harshbarger, Mayor.

R. M. Aiken, Clerk."

" 'Hiram City Council. Hiram, Ga.

9-7-31.

Met in regular session all members of council present, including the Mayor J. M. Harshbarger.

Upon motion of J. M. Brooks and second of W. O. Norris the new town charter and foregoing by-laws and ordinances were adopted for the town of Hiram.

No other business on hand council adjourned until next regular meeting.

Adopted R. M. Aiken, Clerk

10-5-31 J. M. Harshbarger, Mayor.'

"As City Clerk of the City of Hiram, Georgia (formerly and on April 15, 1955, the Town of Hiram), I certify that the within and foregoing extracts of the minutes of the City Council of the Town of Hiram, Georgia, dated 6-1-31 and dated 9-7-31 are true and correct copies of a portion of the minutes of the town Council of Hiram, Georgia, under said dates. I further certify that the printed copy of the charter and by-laws and ordinances of the Town of Hiram, Georgia, attached hereto, marked Exhibit 'A' and made a part hereof, is a copy of the same charter and by-laws and ordinances adopted under and by virtue of said resolution of 9-7-31, the extract referring to which appears hereinbefore. I certify that a part of said by-laws and ordinances adopted by virtue of said action of the Council of the Town of Hiram, Georgia under date of 9-7-31 is Section 85 thereof, as follows: 'Section 85. It shall be unlawful for any person corporation or railway company to operate a locomotive or train through the incorporate limits of the Town of Hiram at a greater speed than 15 miles per hour, and upon conviction for this offense

the offender shall be punished as provided in Section 55 of these ordinances.'

"As City Clerk of the City of Hiram, Georgia (formerly and on April 15, 1955 the Town of Hiram), I further certify that I have inspected the records of the Town of Hiram, Georgia, and of the City of Hiram since the date of incorporation, and I find no action reflected in the minutes of the Town of Hiram, Georgia amending, changing or repealing said Section 85 as quoted hereinbefore, on or prior to April 15, 1955, and that it was in full force and effect on April 15, 1955.

"Given under my hand and under the seal of the City of Hiram, Georgia.

"This February 6th, 1957.

"/s/ Willard Alexander.

City Clerk.

"Attest: /s/ A. T. Smith.

Mayor.

(Seal)"

Attached to the certificate as Exhibit "A" was a booklet which was labeled "Charter and By-Laws and Ordinances of the Town of Hiram, Ga., 1931." The defendants objected to the introduction of the certificate in evidence. After the clerk testified concerning the certificate the defendants again objected to the introduction of the certificate and the court again overruled the objection. The certificate purported to exemplify the minutes of two meetings of the mayor and council of the Town of Hiram: one, the meeting of June 1, 1931; and two, the meeting of September 7, 1931. It will be further noted that the minutes of both meetings as exemplified by the certificate did not recite any by-laws or ordinances. Mr. Willard Alexander, the clerk who executed the certificate testified in part for the defendant: "In the same document, that is, plaintiff's exhibit 15 that we have been referring to, on the second page of it, I begin a sentence at the top in which I state, 'I further certify that the copy of the charter and by-laws and ordinances of the town of Hiram, Georgia, are attached as Exhibit A,' and so on. As to whether those by-laws appear anywhere in the minutes or records of the town of Hiram, I answer that I have not been able to find it. I have

not found it. Exhibit A attached to the certificate is a little book. As to whether, when I stated in my certificate that those were the by-laws and ordinances adopted under and by virtue of said resolution of 9/7/31, I was basing that statement on anything that I found in the minutes of the town of Hiram, I answer that I was basing it on nothing more than the fact that the minutes, the new charter would be drawn in book form, and presumably that was the charter that was adopted. I assumed that that booklet did contain it. As to where I actually got that little booklet from that I have attached here, I believe this particular booklet came from Colonel McGarity's office, I am not sure about this particular book. The book that I have that is identical with this one was in the city attorney's office, Mr. George Bagby. That's the one that I have with me now, the one I refer to as coming from the office of the city attorney. In my certificate I further state, 'I certify that a part of said by-laws and ordinances adopted by virtue of said action of the council of the town of Hiram, Georgia, under date of 9/7/31 is Section 85 governing the speed of trains.' I took that from the booklet. I didn't take it from any of the minutes of the town of Hiram." According to the clerk's own testimony, that portion of his certificate which states that Section 85 of the ordinances which governs the speed of trains within the corporate limits of Hiram was not taken from the minutes or record of the council meeting but was copied from the booklet which was attached to the certificate and which purportedly contained the ordinances, by-laws and charter adopted by the city council at the meeting of September 7, 1931. He further testified that the booklet which he attached to his certificate and which he certifies was adopted by virtue of the resolution adopted in the September 7, 1931, meeting was not attached to the minutes or records of the council and did not come from his custody and control but came from Colonel McGarity's office.

There are two methods of proof of city ordinances: one, by exemplification of the records and minutes of the municipal corporation when certified by the clerk or keeper of the records as provided by Code § 38-606; and two, by the production of the original book of ordinances identified as such by the clerk of the

corporation and shown to have come from his custody as stated in *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500 (3) (16 S. E. 49), and *Harrison* v. *Central of Ga. Ry. Co.,* 44 *Ga. App.* 167, 175 (160 S. E. 694). The ordinance was not proved by either of the two above methods.

That portion of the certificate which stated that Section 85 of the ordinances was adopted at the meeting of September 7, 1931, was not an exemplification of the records and minutes of the corporation but was taken from the booklet which was attached as an exhibit and which came from Colonel McGarity's office. Since this was not an exemplification of the minutes of the September 7, 1931, meeting, the clerk was clearly without authority to incorporate such a statement in his certificate (*City of Dalton* v. *Cochran,* 80 *Ga. App.* 252, 256 (3), 55 S. E. 2d 907) and the certificate was inadmissible because of that defect. The ordinance was not proved by the second method set out above because the booklet was not identified as being the original book of ordinances and shown to have come from the custody of the clerk or keeper of records. Therefore, the certificate of the clerk and the booklet attached thereto were improperly admitted in evidence.

 The plaintiff sought to prove by the testimony of Mr. A. T. Smith, Mayor of Hiram, and Mr. C. B. McGarity, attorney, that the booklet which was attached to the certificate contained the charter, ordinances and by-laws which were adopted at the September 7, 1931, meeting. Mr. Smith's testimony was clearly inadmissible. Parol evidence cannot be used to establish that a book purporting to contain an ordinance of a municipal corporation was adopted by the municipal corporation and was published by virtue of its authority. *Western & Atlantic R. Co.* v. *Hix,* 104 *Ga.* 11 (30 S. E. 424).

Mr. C. B. McGarity testified as follows: "I am C. B. McGarity. I live in Dallas, Georgia. I am an attorney at law. As to whether or not during the year of approximately 1931 I did any legal work for the town of Hiram, Georgia, I answer yes, I was attorney for the town some time before that and up until just a few years ago. I did work for them. I am looking at plaintiff's exhibit 16, at the left hand bottom of the page—the right-hand top. As to whether or not under date of 6/1/31 I attended a

meeting of the council of the town of Hiram, I answer yes, I attended the meeting and they wanted me to draw up and have printed what I call the code or by-laws of the town, and a charter. You have read to me a portion of defendant's exhibit four, as follows: 'On motion of J. W. Brooks and second of W. O. Morris, the new town charter and foregoing by-laws and ordinances were adopted for the town of Hiram.' I was present when that happened. Q. What were the by-laws and ordinances referred to there? A. As contained in the book. . . That was a little over 25 years ago that this occurred. As to whether I am saying that that is the exact book that I carried down there, I answer yes, it is, because I wrote it. As to whether there were or not a number of copies printed of it, I answer that I wouldn't say how many, I had one, this is the one that I had, I don't know how many they had. As to where this particular one came from I had it in my office until I let the plaintiff have it. I had it in my office. As to whether this is the exact one that they had down there and adopted, I answer that they had one just exactly like it, they were all printed on the same sheet and are exactly the same. As to whether this is the exact physical book that they had down there, I answer yes, I know it was, because I carried it down there and brought it back to my office, that was one of the number and they were all alike. As to whether if there was one that remained on file in the office, this is not the one, because I brought it back with me, I answer yes, there were several left there. I think the other one that they brought up here is exactly like it. I made two trips, they first adopted it after I carried the books. You are showing me defendant's exhibit four. It is the resolution that Mr. Lowe was asking me about a moment ago. As to whether this little booklet that is attached here to the exhibit states that it was adopted on September 7, I answer that that's what I told you a minute ago, I went down there in September and they adopted the typewritten form, and I put that in there."

We do not think that Col. McGarity's testimony that the book of ordinances which was attached to the clerk's certificate and which came from the witness's office were the ordinances adopted at the September 7, 1931, meeting was admissible to prove the

existence of the ordinance. While he testified that that very booklet was the one that was before the council at their September 7, 1931, meeting and was the one which was adopted by virtue of the minutes of the meeting as exemplified by the clerk, the booklet itself shows otherwise. On pages 23 and 24 the booklet contained the following which purports to be the resolution of the council by virtue of which they adopted the ordinances contained in the booklet at their September 7, 1931, meeting: "Be it ordained by the Mayor and Council of the Town of Hiram, Georgia, that the foregoing 94 sections be, and the same are hereby adopted as a code of the ordinances and laws of said town and each law, ordinance and section hereof is hereby adopted and made the laws of said town, and all other ordinances or laws in conflict with these are hereby repealed.

"It is further ordered that the Mayor and City Clerk do have the same bound together and printed a neat pamphlet for same to be known as the revised code of Hiram, Georgia, and that the same be paid for out of city treasury. That each officer of the town of Hiram be furnished with one copy of said by-laws, to be returned to the City Clerk at the end of his term of office. Any other person or officer desiring to purchase one of said pamphlets shall do so by paying the Clerk the sum of fifty cents, which amount is to be paid into the city treasury.

"Be it resolved, That nothing in the foregoing ordinances shall be construed so as to relieve or release any person from any penalty, charge, liability or any result whatever from the violation of any law or ordinance heretofore in force, prior to the adoption hereof.

"Read, approved, adopted and passed by the Mayor and Council of the Town of Hiram, Georgia, in a regular meeting on this the 7th day of September, 1931.

"J. M. Harshbarger, Mayor.
"R. M. Aiken, Clerk."

Not only is this purported resolution different from the one as exemplified by the council, but we cannot reconcile how the purported adopting resolution was contained in the printed booklet if that very booklet was the one before them when they adopted that resolution at the September 7, 1931, meeting. There

is also a conflict in Mr. McGarity's testimony itself. While he testified that the booklet which was attached to the clerk's certificate and which came from the witness's office was the one adopted by the council and was before them at the September 7, 1931 meeting, he also testified: "As to whether this little booklet that is attached hereto the exhibit states that it was adopted on September 7, I answer that that's what I told you a minute ago, I went down there in September and they adopted the *typewritten form*, and I put that in there." (Emphasis supplied.)

The case of *Western & Atlantic R.* v. *Peterson*, 168 *Ga.* 259, 263 (5) (147 S. E. 513) is almost a carbon copy of the instant case as to this particular issue. We have read the evidence from the record in that case and contrary to the defendant in error's contention, we think the testimony of Mr. J. E. Mozley, whose testimony was relied on by the plaintiff in that case to establish the existence of the ordinance in question, was much stronger than the testimony of Mr. McGarity in the instant case. Under the holding in the *Peterson* case, supra, the testimony of Col. McGarity that the booklet which was attached to the clerk's certificate was the one adopted at the September 7, 1931, meeting of the council was inadmissible.

The court erred in admitting over proper objections the evidence and testimony above referred to.

■ Error is assigned on the following charge of the court: "I charge you further that it is the contention of the plaintiff in this case that the defendant railroad company failed, through its engineer, to give a warning whistle while the train was at such distance from the crossing as that the blowing of the whistle would have given notice to the driver of the defendant's vehicle, and if you find from the evidence that the defendant railway company, acting through its engineer, did fail to blow the whistle of the engine at a sufficient distance from the crossing to warn the plaintiff's driver of the approach of the train, and if you further find that such failure to blow said whistle at such distance from the crossing was the proximate cause of the injury and damage to the plaintiff's property, then you would be authorized to find a verdict in favor of the plaintiff unless you find that the plaintiff is barred from recovery by virtue of other in-

structions given you." The charge in effect stated that the failure of the engineer to blow the train whistle was negligence per se and submitted to the jury the sole question as to whether such failure was the proximate cause of the collision. The charge was error. The engineer was not required by law to blow the train whistle upon approaching the crossing which lay within the corporate limits of the town of Hiram, Georgia. Code § 94-507. The court should have submitted to the jury for their determination the question whether the failure of the engineer to blow the train whistle under the circumstances was common-law negligence. *Pollard* v. *Savage*, 55 *Ga. App.* 470, 474 (190 S. E. 423).

■ Under the above ruling it is unnecessary to rule on the general grounds of the motion for new trial.

The court erred in denying the amended motion for new trial.
*Judgment reversed. Quillian and Nichols, JJ., concur.*