38191.   FIELDS v. JACKSON.

DECIDED JUNE 27, 1960—REHEARING DENIED JULY 12, 1960.

*Price, Spivey & Carlton, Cohen Anderson,* for plaintiff in error. *Johnston & Ussery,* contra.

TOWNSEND, Judge. ■ The first two special grounds of the motion for new trial make the contention that the verdict rendered by the jury in the case in favor of the plaintiff in the sum of $17,744 is grossly excessive and manifests a bias or prejudice on the part of the jury in its consideration of the case because the plaintiff's special damages under the evidence amounted to only $488, which special damages were due solely to time lost by the plaintiff from her employment, and because said award was grossly excessive in that the plaintiff's pain and suffering were limited to facial and breast injuries, not involving any unusual degree of pain.

In special ground 13, the contention is made that this award was excessive and manifests bias and prejudice on the part of the jury because it is contended that the jury took into consideration the fact that the defendant was insured by the Cotton States Mutual Insurance Company, represented by the "Co-op," or Farmers Cooperative in Statesboro. In connection with this ground, plaintiff made an affidavit by which he sought to show that one of the jurors made a statement subsequent to the rendition of the verdict that "the jury would not have rendered a verdict like that if it had not been for the fact that they hated the Co-op so much."

The evidence in this case shows that the plaintiff was a married woman, 27 years of age; that prior to the accident and the injuries sued for she had what might generally be regarded as attractive facial features, and that she was otherwise in generally good health; that as a result of the collision between the automobile in which she was riding and which her husband was driving and the automobile of the defendant, she suffered a moderate degree of shock which was reaction to the accident; that she had many severe bruises about the face, head and neck, fractures, or breaks of the flow of the left orbit (cheek bone), and of the left arch going back to join the skull; that there was some depression in the flow of the orbit; that there was a compound fracture, or break, of the ridge of the upper jaw bone with complete loss of two upper front teeth with a third tooth broken off at the gum line, said teeth having been knocked out by a forceful blow of some sort; that there was a severe hemorrhage with accumulation of blood in the tissues about the nose and both eyes, giving her the appearance of "having been kicked in the face by a mule"; severe bruises and contusions with hemorrhage or bleeding into the tissues of the right breast with the later formation of a large pocket of blood in the breast tissue which had to be opened by incision and the excess blood drained off; that there were multiple bruises over the body and extremities; and that the plaintiff suffered an apparent slight or moderate displacement of the nose to the left, which was permanent in character, or could be corrected only by the subsequent application of plastic surgery. The plaintiff testified in detail as

to the manner and ways in which she suffered as a result of the physical injuries, and as to her shame and embarrasment resulting from the disfigurement of her face.

"Damages are given as compensation for the injury done . . ." *Code* § 105-2001. "The question of damages being one for the jury the court should not interfere, unless the damages are either so small or so excessive as to justify the inference of gross mistake or undue bias." *Code* § 105-2015. As an element of pain and suffering, a plaintiff may recover for mental pain and suffering and for shame and mortification as the result of disfigurement or mutilation inflicted as a result of the tortious injury perpetrated by the defendant. *Ware v. Lamar*, 16 Ga. App. 560, 566 (5) (85 S. E. 824); *Davis v. Murray*, 29 Ga. App. 120 (2) (113 S. E. 827); *Jackson v. Ely*, 56 Ga. App. 763 (4) (194 S. E. 40). These elements, as well as the physical pain and suffering endured by the plaintiff as a result of the physical injuries to her body, were recoverable, and as to all of these elements, denominated generally pain and suffering, the sole measure of damages is the enlightened consciences of fair and impartial jurors. *Central R. & Bkg. Co. v. Dottenheim*, 92 Ga. 425 (4), 428 (17 S. E. 662); *City of Camilla v. May*, 70 Ga. App. 136 (6) (27 S. E. 2d 777); *Criswell Baking Co. v. Milligan*, 77 Ga. App. 861, 876 (8) (50 S. E. 2d 136). As was said by Judge Lumpkin in the oft-quoted case of *Lang v. Hopkins*, 10 Ga. 37, at page 46: "As judges, we are not authorized to substitute our conjectures or apprehensions for the determination of that body on whom the law has devolved the duty of deciding, duly weighing all the circumstances of the case. . . Judges should be very cautious, therefore, how they overthrow verdicts given by twelve men on their oaths, on the ground of excessive damages, upon a matter left so entirely to their discretion, especially where the presiding judge before whom the cause was tried, and who is presumed to have been familiar with all the facts, has refused to interfere. For this court to order a rehearing, under such circumstances, it must be made manifest by the proof, that the damages were 'flagrantly outrageous and extravagant.'" Finally, in answering the defendant's contention in this regard we can do no better than to

quote from the opinion of the late Judge Parker of this court in the case of *Western & Atlantic R. v. Burnett,* 79 Ga. App. 530, 542 (54 S. E. 2d 357) where, after quoting from the *Lang* case, supra, and in reviewing many other authorities, he said: "The verdict in this case was found by the twelve jurors and approved by the trial judge. This is in effect the verdict of thirteen men because 'as against a motion for a new trial, it takes thirteen men to make a verdict.' *Southern Ry. Co. v. Miller,* 3 Ga. App. 410, 412 (59 S. E. 1115). The importance and weight given under our law to the discretion of the trial judge in passing on motions for new trial, and in giving his approval to the verdicts of juries, is illustrated in the holding that 'If the court trying the case does not consider the damages excessive, any other court ought to be cautious in holding them to be so.' *Adkins v. Williams,* 23 Ga. 222 (2).

"In the case of *Seaboard Air-Line Ry. v. Miller,* 5 Ga. App. 402, supra, which may be regarded as a leading case on the subject of damages, it is held that the presumption is that the jurors were impartial and that they understood the case before them. That case also holds that the right of appellate courts to grant new trials for excessiveness in verdicts must not be exercised unless the verdict is shown to be the result of bias or gross mistake, or shows itself to be so. This test is also applied: 'If the damages are "monstrous indeed, and such as all mankind must be ready to exclaim against, at first blush," or (we may add, after mature deliberation), if the thing speaks for itself, the verdict must be considered as the result of bias or mistake for there is no other reasonable hypothesis.' In *City of Rome v. Davis,* 9 Ga. App. 62, 67 (70 S. E. 594), it was held that 'The existence of prejudice or bias can not rest upon suspicion. That the verdict was the result of prejudice and bias must be shown.' In *Realty Bond & Mortgage Co. v. Harley,* 19 Ga. App. 186, 187 (91 S. E. 254), this court said, 'Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exhorbitant," "flagrantly outrageous," and "extravagant." . . . It must carry its death warrant upon its face.' Although

a verdict may be 'large and generous,' where the evidence abundantly authorized a finding for the plaintiff, this court does not feel authorized under the law to set the verdict aside on the sole ground that it is excessive, there being nothing in the record to indicate prejudice or bias on the part of the jury, and the verdict having been approved by the trial judge. *Seaboard Air-Line Ry. v. Vaughn,* 19 Ga. App. 397 (3) (91 S. E. 516). See also *City of East Point v. Hendrix,* 27 Ga. App. 485 (108 S. E. 623); *Atlantic Greyhound Corp. v. Austin,* 72 Ga. App. 289, 292 (33 S. E. 2d 718). The period of inflation now existing was a factor which the jury could consider in arriving at the amount of their verdict. See *Seaboard Air-Line Ry. v. Miller,* 5 Ga. App. 408, supra; *Ocilla Southern R. Co. v. McInvale,* 26 Ga. App. 106 (105 S. E. 451); and *Atlantic Coast Line Railroad Co. v. Wells,* 78 Ga. App. 859, supra." Under all the facts and circumstances of this case, we cannot say that the verdict was so excessive as to, in itself, manifest bias or prejudice for the plaintiff or against the defendant.

With respect to special ground 13 in this connection, it is sufficient to say that the law is well established in this State that a juror may not subsequently to the rendition of the verdict impeach the same by making any affidavit or statement, directly or indirectly, showing that the verdict was improperly rendered. *Saunders v. Sasser,* 86 Ga. App. 499, 503 (4) (71 S. E. 2d 709). Upon proper application of this rule of law, therefore, an affidavit or statement by a party to the case or by a third person as to some statement of a juror made subsequently to the rendition of the verdict will not be received to impeach or discredit the verdict after its rendition. While no Georgia case has been cited and none has been found exactly so holding, it would seem that, in order to impeach the verdict or to show bias or prejudice on the part of one of the jurors, it would at least be necessary to show that statements were made by the juror prior to his being sworn as such indicating an attitude or state of mind evidencing bias or prejudice on his part existing prior to his taking his oath as a juror. No statement made by him after the verdict, even though it might evidence a pre-existing prejudice or bias existing in his mind, could be received to impeach his verdict after its rendition.

It follows from what has been said above that the verdict rendered by the jury in this case, which has the approval of the trial judge, as evidenced by his judgment overruling the motion for a new trial, cannot be held by this court to have been excessive, nothing appearing in the record to indicate bias or prejudice existing in the mind of any of the jurors prior to the entry of the verdict. It follows that the trial judge did not err in overruling special grounds 1, 2 and 13 of the motion for new trial.

■ The collision in this case took place in the town of Portal on January 27, 1959, at about 7:10 a.m. Witnesses for the plaintiff testified that at the time visibility was extremely poor due to fog and mist, and the plaintiff introduced evidence tending to show that the time of sunrise at Portal, Georgia, on January 27, 1959, was 7:25 a.m., some fifteen minutes after the collision. The defendant contended that visibility was good, witnesses testifying on his behalf stating that an automobile could be seen "as far as the eye could see." Over the objection of the defendant, the court permitted a witness for the plaintiff to testify in substance that after she left the scene of the collision she burned the lights on her automobile. This testimony was objected to as being irrelevant and immaterial, since it was testimony of what the witness did at some other time and place not connected with the time and place of the collision in this case. While the relevancy of this testimony was doubtful, it was proper for the court in such a case to admit it and leave its weight and credit for the jury. *Purser v. McNair,* 153 Ga. 405 (2) (112 S. E. 648). *Code* § 38-202. However, as stated, the evidence shows that the collision occurred at about the hour of sunrise, at a time when, according to the natural course of events, of which the courts will take judicial cognizance (*Kirkland v. Wheeler,* 84 Ga. App. 352, 365, 66 S. E. 2d 348), the light emanating from the sky is increasing. Under these circumstances, when a witness testified to being at the scene of the collision and testified to driving her automobile away from the scene and testified that she found it necessary to use her headlights until she had driven several miles away from the scene, it cannot be said that such evidence did not tend to illustrate logically one

side of the issue made by the pleadings and the evidence, that is, whether there was sufficient light at the time of the collision to enable automobiles to be operated safely without the use of their headlights. There was no harmful error in admitting this evidence under the particular circumstances of this case.

■ The fourth special ground of the motion assigns error on the admission in evidence of the testimony of a policeman for the City of Portal to the effect that there was a speed limit sign on U. S. Highway No. 80 in the City of Portal at the time of the collision which advised motorists that the speed limit in the City of Portal was 25 miles per hour. It was contended in the objection to this evidence that since there was no proof that such sign had been erected pursuant to authority, evidence of its presence was not admissible. In special ground 7, complaint is made that the trial court erred in permitting the clerk of the town of Portal to testify that there was a traffic ordinance in the Ordinance Book of Portal limiting the speed within the limits of the town to 25 miles per hour, and that this ordinance was in force and effect on January 27, 1959. The defendant objected to this evidence and moved to exclude it on the ground that it was hearsay and that it was not the proper way to prove the existence of a city ordinance, the ordinance book being in writing and before the court.

As to the admissibility of testimony regarding the speed limit sign, *Code Ann.* § 68-1610(c) provides as follows: "The disregard or disobeyance of the instructions of any official traffic-control device or signal, placed in accordance with the provisions of this law, by the driver of a vehicle, shall be deemed as prima facie evidence of a violation of the law, without requiring proof of who and by what authority such sign or device has been erected." If the statute is construed to mean that the burden is on the person offering the testimony that a traffic-control device existed to show in the first instance that such sign or device is "official," and was "placed in accordance with the provisions of this law" then no meaning can be given to the last part of the sentence which provides that proof shall not be required in the first instance "of who and by what authority such sign or device has been erected." The statute must therefore

mean that the movant may offer evidence that a traffic-control sign or device existed at the given spot; the burden is then upon the person objecting to the evidence to offer evidence showing that such signal was not placed there by any proper governmental authority. The evidence might be general, as showing that the signal in question is not one used by the authority having jurisdiction at that place; it might be a showing that it was placed there by an unauthorized authority, or it might be any other type of evidence sufficient to overcome the prima facie showing that such device existed and should therefore have been obeyed. In the absence of rebutting proof, the testimony was admissible and sufficient to establish that the legal speed limit at the place in question was 25 miles per hour. *Noland v. England*, 101 Ga. App. 306 (4) (113 S. E. 2d 649).

For this reason, although it was error to allow the city clerk to prove the existence of the city speed ordinance by parol (*Western & Atlantic R. Co. v. Hix*, 104 Ga. 11, 30 S. E. 424), and although the ordinance book from which he was in fact testifying should have been offered in evidence instead to prove this fact (*Southern Ry. Co. v. Thompson*, 96 Ga. App. 305, 309, 99 S. E. 2d 845), nevertheless the testimony only went to prove that the legal speed limit was 25 miles per hour so that an infraction thereof would amount to negligence per se. Testimony as to the existence of the sign had the same effect. Both kinds of testimony go only to the question of whether a rate of speed of over 25 miles per hour, if proved, would justify a finding of negligence per se. It is the rule generally that the allowance of illegal testimony to establish a fact is not cause for a new trial where the testimony objected to is established by other evidence. *Georgia Power Co. v. Chapman*, 46 Ga. App. 589 (2) (168 S. E. 134). Had the court rejected the parol testimony of the clerk regarding the city ordinance, as he ought to have done, the movant would undoubtedly then have offered the ordinance book in evidence, it being actually in court and the testimony of the clerk having been based on his inspection of its provisions. Accordingly, the error was not such as to require a reversal of this case.

■ In special grounds 5 and 6 error is assigned because the

trial judge permitted counsel for the plaintiff over the objection of counsel for the defendant to repeatedly examine the plaintiff on direct examination as to her injuries and pain and suffering, and because the trial court, after objections by counsel for the defendant, overruled the following motion for a mistrial: "Mr. Carlton: If Your Honor please, we'd like to move for a mistrial in this case on the ground that, we feel, that the court permitting counsel to repeat questions over and over again, of this witness, with reference to her injuries and her pain and suffering is so prejudicial, the repetition is inflammatory and has deprived us of our substantial right that we have."

These grounds of the motion show that the court permitted counsel for the plaintiff to repeatedly, and on at least three separate occasions, examine the plaintiff with regard to her injuries. It is not apparent, however, that this repetition was due to any deliberate effort on the part of counsel for the plaintiff to prejudice the jury in favor of the plaintiff's case. The trial judge has a wide latitude of discretion in controlling the examination of witnesses by counsel on direct and on cross-examination, and unless it is manifest that he has abused this discretion, the mere allowance of repetition in the examination of the witness or party on direct examination will not work a reversal of the case. See *Harris v. Central Railroad*, 78 Ga. 525, 533 (3) (3 S. E. 355); *Alabama Construction Co. v. Continental Car &c. Co.*, 131 Ga. 365, 367 (3) (62 S. E. 160); *Greer v. State*, 159 Ga. 85, 90 (2) (125 S. E. 52); and *National Land & Coal Co. v. Zugar*, 171 Ga. 228 (1) (155 S. E. 7).

■ An assignment of error contained in a ground of the motion for a new trial complaining of the admission or exclusion of evidence must show not only error, but harmful error. *Wright v. State*, 6 Ga. App. 770 (2) (65 S. E. 806). The admission of illegal evidence over timely objection, if harmless, will not constitute cause for reversal. *Burch v. American Grocery Co.*, 125 Ga. 153, 158 (2) (53 S. E. 1008); *Weldon v. Howard*, 45 Ga. App. 668 (1) (165 S. E. 763). Special ground 8 of the motion assigns error because the trial court admitted into evidence a letter from the director of the Nautical Almanac Office of the U. S. Naval Observatory addressed to one of the

attorneys for the plaintiff, in which it was stated that the time of sunrise at Portal, Georgia, on January 27, 1959, was 7:25 a.m., e.s.t. This letter bore a certification that the statement therein was the result of an accurate and true computation by the Nautical Almanac Office, an agency charged by Federal statute with the duty of making such computations and publishing the results. The defendant objected to this evidence, contending that this was not the way to prove the facts sought to be proved thereby, and that if the plaintiff wished to establish the time of sunrise, they should have someone there to testify to such fact.

The admission of this letter into evidence, if error, was harmless. "Most prominent perhaps among the facts of science judicially known to the court are those so to speak of the almanac. It is said that the almanac is a part of the law of the land. By this it is meant that the courts will judicially notice the things properly belonging to an almanac without pleading or proving them. The courts take judicial notice of the calendar and of the periods within the calendar. . . The time when the moon or the sun rises or sets on a particular day is judicially known, as well as the time of the several changes of the moon, and the speed at which the sun sinks below the horizon, the duration of twilight, and the presence or absence of daylight, the natural conditions of visibility, and the direction in which the sun casts a shadow at a given time of a particular day." 23 C. J. 164, 165, Evidence, § 1990. Louisville & Nashville R. Co. v. Brinckerhoff & Co., 119 Ala. 606 (24 So. 892); State v. Bixby, 91 Vt. 287 (100 A. 42); Montenes v. Metropolitan Street Ry. Co. (N. Y. Sup. Ct., App. Div.), 78 N. Y. S. 1059, 1060.

The court and jury were presumed to know the hour of sunrise at Portal, Georgia, on January 27, 1959, and it was unnecessary to introduce any evidence in proof of this fact, though perhaps proper to admit evidence of such fact, for the purpose of refreshing the minds of the court and the jury. As was said in Lendle v. Robinson (N. Y. Sup. Ct., App. Div.), 65 N. Y. S. 894, 898, "An almanac from an unofficial source, and not properly verified, is not, strictly speaking, competent evidence; but receiving it as an aid to the memory of the court and jury is not reversible error. It was entirely proper for the

court, without evidence, to take judicial notice of the time of sunset on the day of the accident, and, for the purpose of refreshing the mind of the court, there was no legal objection to consulting an almanac. In Hunter v. Railway Co., 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246, it is said: 'Thus, it has been held that courts will take judicial notice * * * of the time of the rising and the setting of the sun and moon, and generally of those things which happen according to the ordinary course of nature; the course of time and the movements of the heavenly bodies; the coincidence of the days of the week with the days of the month.'

"And in a preceding case (Case v. Perew, 46 Hun. 57) it was said: 'The almanac was not competent evidence, as such, to prove when the moon rose on that day; but, if the statement on the subject in it was correct, the defendant could not have been prejudiced by it. Judicial notice will be taken of the time the moon rises and sets on the several days of the year, as well as the succession of the seasons, the difference of time in different longitudes, and the constant and invariable course of nature. It may be assumed that the court, treating the almanac as correctly stating the time when the moon rose on the day in question, received it in evidence to refresh the memory of the jury on the subject; and in that view we think it was competent.' "

This ground of the motion does not show that the time of sunrise at Portal, Georgia, on January 27, 1959, as shown by the letter objected to, was in any wise incorrect. It follows that the admission of the letter into evidence is not shown by this ground of the motion for a new trial to have been harmful to the defendant, and the trial court did not err in overruling special ground 8 of the motion.

■ The judge began his charge by stating extensively the contentions of the parties as evidenced by their pleadings. After concluding that statement, he instructed the jury that he had not intended to intimate or express an opinion as to what had or had not been proven, and he then told the jury that they might, in their deliberations, refer to the pleadings as often as they saw fit in order to ascertain more in detail what the

■

contentions of the parties were. Following that statement he charged them, "But I caution you, that pleadings in the case are not evidence. You get the evidence from the witness stand." In special ground 9, this charge is complained of as being argumentative and confusing to the jury in that it undertook to instruct them that evidence and oral testimony are one and the same, and that it tended to eliminate from the jury's consideration the defendant's documentary evidence which consisted of certain pleadings filed in a case between the defendant and Doughty Jackson, the plaintiff's husband. This charge did not purport to be one defining the term, "Evidence," and while it perhaps was inapt in that it was subject to the criticism that it failed to instruct the jury to consider the documentary evidence in the case, it is not apparent from the record and particularly from the documentary evidence of the defendant referred to how the pleadings from the prior case could have materially aided the defendant's case here. An examination of the pleadings set forth in defendant's Exhibit "A" simply shows an extract from the petition filed by the defendant against Doughty Jackson, in which he alleged that Doughty Jackson crossed over from his side of the road directly into the path of the defendant's vehicle, and said exhibit then contains an extract from the answer of Doughty Jackson in which he denies the allegations of the petition in that regard. It is not apparent how the mere reiteration in this case of the respective contentions of the defendant and of Doughty Jackson in the previous case could have materially aided the defendant's case here. For this reason, if the court's failure to instruct the jury so as to authorize them to consider such documentary evidence was error, it was certainly not harmful error. It follows that the trial court did not err in overruling special ground 9 of the motion.

■ The plaintiff contended in her pleadings that the defendant's negligence constituted the sole proximate cause of her injuries. The defendant, on the other hand, contended that the negligence of the plaintiff's husband who was driving the automobile in which she was riding was the sole proximate cause of her injury. The evidence was sharply in conflict, and it

is fair to say that in so far as these basic contentions are concerned, a verdict for either side would have been authorized since the negligence of the host driver is not imputable to the guest, and there was evidence that the plaintiff had no control over the operation of the automobile by her husband. *Pitts v. Farlow*, 94 Ga. App. 314, 315 (94 S. E. 2d 391). However, the jury was not required to find in accordance with either contention, but would have been authorized to find that the negligence of each driver was a contributing proximate cause of the plaintiff's injuries. Accordingly, while the portions of the charge complained of in special grounds 10, 11 and 12 were perhaps less apt than they might have been, they were not harmful error under the ruling made in *Akin v. Randolph Motors*, 95 Ga. App. 841, 846 (4) (99 S. E. 2d 358). These portions of the charge were as follows:

"I charge you further that where a single injury results from the concurrent negligence of two persons, these two persons are joint tortfeasors and they may be sued jointly or severally, and recovery may be had against either or both. In such a case, the concurring negligence of one is no excuse or defense for the other.

"If the negligence of two people combine to produce injury to a third person, either of the two may be sued for the entire amount of the damages incurred by the third person and the other person's negligence is no defense. In such a case, there is no accounting of comparative negligence between the two people causing the injury and one of them can be held for the entire damage even though the other was more negligent.

"If you find that the plaintiff, Mrs. Jackson, was injured by combined negligence of her husband, Doughty Jackson, and the defendant, John B. Fields, and that Mrs. Jackson had no control over the automobile in which she was riding, then you should return a verdict against the defendant in this case for whatever amount of damages you should decide she sustained.

"If you find that the plaintiff, Mrs. Jackson, was injured by the joint negligence of Doughty Jackson, and the defendant, John B. Fields, and you further find that Mrs. Jackson had no control over the automobile in which she was riding, then the

defendant in this case would be liable for the damages which you find resulted from the injury to Mrs. Jackson."

The true rule in cases like this is, of course, that the negligence of the host driver is not imputable to the guest, and unless the negligence of the host driver constituted the sole proximate cause of the guest's injuries, a recovery by the guest against the driver of the other automobile whose negligence constituted a proximate cause of the guest's injuries, is not barred nor reduced under the comparative negligence rule by the mere fact that the host was also negligent. *Smeltzer v. Atlanta Coach Co.*, 49 Ga. App. 755 (2) (176 S. E. 846); *Atlantic Coast Line R. Co. v. Phillips*, 84 Ga. App. 739 (67 S. E. 2d 246). It would perhaps have been better for the judge to have charged simply in this, or similar, language, but the charges complained of in special grounds 10, 11 and 12 were not subject to any of the criticisms leveled at them in those grounds. They did not introduce any issues not made by the pleadings or the evidence; they were not misleading or confusing, nor were they argumentative, and the failure of the trial court to define "combined negligence" and "joint negligence," if it may be said that such failure is properly raised in these grounds of the motion, was not harmful, since the meaning of such terms is plain. It follows that the trial judge did not err in overruling special grounds 10, 11 and 12 of the motion.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed.* *Gardner, P. J., and Carlisle, J., concur.*