32791. GENERAL REFRACTORIES COMPANY v. ROGERS.

BOWLES, Justice.

Appellee, E. Alton Rogers, plaintiff below, brought suit against General Refractories Company, appellant herein, defendant below, claiming damages to a 508 acre tract of land owned by him in Baldwin County, Georgia, as a result of defendant's conduct in mining operations on lands belonging to defendant adjacent to plaintiff's land. Plaintiff claimed that defendant increased the natural flow of surface water onto plaintiff's land in an unnatural manner which altered the elevation of his land causing damage. He charged that large quantities of mud, sediment, dirt and overburden were caused to be deposited on his land from defendant's nearby operations. His complaint alleged that 40 acres, more or less, had been affected by these operations which resulted in a killing effect on the trees on his property, primarily used as a timber operation or tree farm.

The complaint alleged that defendant was not only careless, but that it wilfully, wantonly, recklessly and in

total disregard of plaintiff's rights, excavated and conducted its operation so as to damage plaintiff's land. He further charged defendant acted in total disregard of plaintiff's rights in failing to correct the situation or to even discuss it with plaintiff or his representatives after request to do so and that defendant was stubbornly litigious. He further alleged that defendant's operations and acts were a nuisance depriving plaintiff of his own property and asked that it be temporarily and permanently enjoined. He sought general damages, resulting from a decrease in value of his property in the amount of $63,500, punitive damages in the amount of $25,000 and attorney fees. Defendant consented to a temporary restraining order.

At trial and upon close of plaintiff's evidence, and again at the close of defendant's evidence, defendant moved for a directed verdict in its behalf in regard to plaintiff's claim for punitive damages and also in regard to his claim for attorney fees. The court overruled both motions and the jury returned a verdict for plaintiff awarding him $15,000 actual damages, $5,000 punitive damages and $2,500 attorney fees. The jury also found in favor of the plaintiff on the issue of a permanent injunction. Judgment was entered accordingly, permanently enjoining defendant from any further activities that would cause damage to plaintiff's property.

Defendant thereafter filed post-judgment motions for judgment notwithstanding the verdict on the questions of punitive damages and attorney fees. It also filed a motion to restructure, correct and amend the judgment in regard to the permanent injunction features. All motions were denied and appeal was brought to this court from the various judgments entered.

Although there are nine numbered enumerations of error, the first six deal with the correctness of the judgment in awarding punitive damages and attorney fees. The seventh enumeration complains of the introduction into evidence, over defendant's objection, testimony of a witness as to the value of attorney fees. The eighth enumeration complains that the permanent injunction was not supported by the evidence. The ninth enumeration complains that if a permanent injunction

was supported by evidence it was too vague and broad and was prohibitive in its effect upon appellant.

1. Code Ann. § 105-2002, entitled "Aggravation," provides that "In every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages, either to deter the wrongdoer from repeating the trespass or as compensation for the wounded feelings of the plaintiff." This section is a codification of the common law.

Under the facts here, to authorize the imposition of exemplary damages, or punitive damages as they are commonly called, under Code Ann. § 105-2002 there must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (1) (45 SE 1000) (1903); *Standard Oil Co. v. Mt. Bethel U. M. Church,* 230 Ga. 341 (196 SE2d 869) (1973); *Gilman Paper Co. v. James,* 235 Ga. 348 (219 SE2d 447) (1975).

We have carefully examined the record and we find no evidence that anyone connected with the defendant, in any manner, entered upon the lands of plaintiff; nor was there any showing made that anyone on defendant's behalf wilfully or intentionally diverted water, natural or otherwise, so as to cause the same to be unnaturally deposited on defendant's property. No wilful conduct, malice, fraud or oppression was shown or illustrated in any way.

We must then consider whether or not the evidence introduced was sufficient to support a verdict for punitive damages because of entire want of care which would raise the presumption of a conscious indifference to consequences. Plaintiff, on whom the burden rested, did not show or illustrate whether the loose dirt complained of was brought to his land by ordinary rainfall or by flooding. Assuming, arguendo, that the placing of loose dirt on defendant's own land near a natural drain is negligence, we cannot agree that such activity, without other wrongful acts, amounts to wilful or wanton negligence. Normal rainfall might cause dirt to wash and damage a lower elevation, but this happening would not impute wilful misconduct to the higher elevation

landowner.[1]

On the other hand, if the loose dirt was moved by force of elements which human intelligence could not predict, any damages inflicted could be attributed to an act of God. Though damage may result in either instance, such conduct, without more, cannot be attributed to wilfullness or wantonness or to a total disregard of the rights of another.

Plaintiff's entire case is based upon the premise that defendant, in using its own property, mined the same in such a manner as to remove the trees and vegetation therefrom and to pile dirt or overburden on its own lands so that rains, and the run-off from rains, would cause this overburden to be carried onto the property of plaintiff.

As sure as night follows the day, water from heaven must go and will go somewhere. Rainfall not entering the soil itself will run off towards lower land in keeping with the indisputable law of gravity. If man diverts the water from its usual course, or causes it to congregate in large quantities on the property of his upper or lower riparian neighbor this could be considered wilful. But, the piling of dirt on defendant's own property in carrying out a legitimate business activity, not abnormally dangerous when supervised under the authority of the law of this state, without more, would not support an allegation of conscious indifference where a portion is washed down natural drains onto another's property. The piling of dirt on one's own property may be considered negligence and under certain circumstances may even be considered gross negligence, but under the facts of this case it is not such a callous disregard of the rights of another to support

---

[1] See *Brand v. Montega Corp.,* 233 Ga. 32 (209 SE2d 581) (1974), quoting from the Restatement of the Law, Torts 2d, Vol. I, § 166 (1965). "Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent entry on land in the possession of another, or causing a thing or third person to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm to the possessor or to a thing or third person in whose security the possessor has a legally protected interest."

a verdict for punitive damages.

Practically every farmer in Georgia clears his land of trees and vegetation. Most pile loose soil, either by routine cultivation or with earth moving machinery, for terraces. Natural rainwater, depending on the volume, takes small or large amounts of this soil onto the lands and drains of his lower neighbor. Can we say that this activity presents a jury question as to whether the conduct is wilful? Malicious? Wanton? Oppressive? A conscious indifference to consequences? We think not.

Plaintiff's evidence in the case shows that he had sold this tract of land in 1973 for its fair market value, and although he held a purchase money deed to secure debt against the same after that date, he did not regain title or possession until the 25th day of February, 1975. The evidence also shows a small dam was built at some point in time and there was some siltation in 1973 and 1974. All mining operations of defendant were terminated in 1974. The plaintiff did not complain to the defendant until later in 1975. Plaintiff pled ownership of the damaged tract but defendant did not admit this allegation. Plaintiff's proof in this respect was meager, but it did show affirmatively he was not the owner or possessor from October 3, 1973, through February 28, 1975. When the damages occurred was not proven. For this reason alone we could not approve punitive damages. Whatever damages defendant may have caused plaintiff had to result from its activities after the date plaintiff obtained title on February 25, 1975, until the time the case was tried. If the land was damaged while owned by another, plaintiff could not recover. *Coffin v. Barbaree,* 214 Ga. 149 (103 SE2d 557) (1958); *Shirling v. Hester,* 201 Ga. 706 (40 SE2d 743) (1946).

The evidence is uncontradicted that during the period overlapping February 25, 1975, to trial, defendant was engaged in carrying out a reclamation project upon its lands in keeping with the requirements of the Surface Mining Act (Code Ann. § 43-1400 et seq.), and under direction of the state officials charged with the responsibility of enforcing that Act.

Plaintiff relies on one case, *Ponce de Leon Condominiums v. DiGirolamo,* 238 Ga. 188 (232 SE2d 62) (1977), in which plaintiff recovered punitive damages as a

result of defendant's routing his drainage system onto plaintiff's land. In the instant case, however, no evidence introduced showed any activity on the part of the defendant to cause water to be accumulated in quantities, diverted unnaturally onto defendant's property; nor did plaintiff notify defendant of the complained of activities from the inception; nor did defendant refuse to take action; nor was there a lack of effort on its part to lessen the quantity of diverted water as was the case in *Ponce de Leon Condominiums v. DiGirolamo,* supra. That decision is distinguishable on its facts from the present case, and is not applicable. Compare *Brand v. Montega Corp.,* 233 Ga. 32 (209 SE2d 581) (1974).

Although there is some evidence that defendant failed to correspond or communicate with plaintiff after notice of damage, it is undisputed that defendant had embarked upon its reclamation program almost a year prior to notice and during the program spent $21,000 to correct any sedimentation problems.

Prior to trial the defendant had satisfied the supervising state authority that its reclamation activities were complete. Written notification to that effect was furnished plaintiff.

Testimony that there would be a continued flow of silt *already* in the drains as a natural consequence of the former siltation problems was not evidence of continued wrongful conduct. There was no evidence that defendant piled any more loose dirt or overburden anywhere, after notice of damage was given. Plaintiff admitted in his testimony that he based his contention that the defendant acted wilfully, deliberately and intentionally on the fact that defendant was not very careful in dumping the overburden on its land and allowing it to wash across it to plaintiff's land. He stated that this was the only reason for making the allegation and seeking punitive damages.

To allow punitive damages in a case such as this where the offender has taken all of the steps required by the supervising state authority and has expended substantial sums in doing so, would make the standard "conscious indifference to consequences" a requirement without substance.

Our cases on punitive damages do not present clear

guidelines to follow, and it would be simple to say that punitive liability in every case is a jury question. But in examining the cases approving punitive damage awards, we find there has been one or more clear acts supporting wilful or wanton conduct, malice, oppression, conduct exemplifying conscious indifference to consequences or a succession of tortious acts. See *Guest v. Riddle,* 237 Ga. 535 (288 SE2d 910) (1976) (wilful misconduct in entering property); *Pratt Engineering &c. Co. v. Trotti,* 142 Ga. 401 (83 SE 107) (1914) (intentionally causing unnecessary inconvenience); *Darnell v. Columbus Show-Case Co.,* 129 Ga. 62 (58 SE 631) (1907) (a distinct physical invasion of property; a positive tort); *Southern R. Co. v. Wood,* 114 Ga. 140 (39 SE 894) (1901) (wilful removal from train, one who had a legal right to ride); *Battle v. Kilcrease,* 54 Ga. App. 808 (189 SE 573) (1936) (hit and run, entire want of care); *Charleston & W. C. R. Co. v. McElmurray,* 16 Ga. App. 504 (85 SE 804) (1915) (15 or more successive fires on different days).

Without proof of such conduct awards have been uniformly disapproved. See *Gilman Paper Co. v. James,* 235 Ga. 348 (219 SE2d 447) (1975) (bona fide title dispute); *Investment Securities Corp. v. Cole,* 186 Ga. 809 (199 SE 126) (1938) (wrongful levy in good faith); *Southern R. Co. v. O'Bryan,* 119 Ga. 147 (45 SE 1000) (1903) (passenger carried beyond station and great exposure); *Ray Jones, Inc. v. Cowan,* 139 Ga. App. 811 (229 SE2d 669) (1976) (silt in lake but attempts to rectify); *Gunter v. Logue,* 138 Ga. App. 868 (227 SE2d 773) (1976) (no malevolent conduct to satisfy the standard); *BLI Constr. Co. v. Debari,* 135 Ga. App. 299 (217 SE2d 426) (1975) (injury from fall of standing wall, others had fallen). In so holding, we recognize the injured party's right to actual damages, as appellant does not contest that award here.

The trial court erred in refusing to direct a verdict at the close of the evidence as requested by the defendant regarding punitive damages.

2. With the removal of punitive damages the question of whether to award attorney fees is made easier. "Attorney's fees as expenses of litigation are not punitive or vindictive damages, but stand alone, are regulated by

Code § 20-1404, and the jury may allow them if the defendant has acted in bad faith in the transaction out of which the cause of action arose." *Standard Oil Co., v. Mt. Bethel U. M. Church,* 230 Ga. 341, supra (3); *Bowman v. Poole,* 212 Ga. 261 (3) (91 SE2d 770) (1956).

Having held the plaintiff did not prove an intentional tort the element of bad faith is eliminated from further consideration in passing on attorney fees. Additionally, plaintiff did not prove that he had incurred any expense or was put to any unnecessary trouble as a result of defendant's conduct. This leaves only the question of whether or not the defendant was stubbornly litigious. Mere refusal to pay without suit is not sufficient to award attorney fees. *McKenzie v. Mitchell,* 123 Ga. 72 (51 SE 34) (1905); *Pferdmenges, Preyer & Co. v. Butler, Stevens & Co.,* 117 Ga. 400 (43 SE 695) (1903); *Tift v. Towns,* 63 Ga. 237 (3) (1879).

Great disparity between demand and verdict alone may defeat an award of attorney fees under Code Ann. § 20-1404 when bottomed on a stubbornly litigious theory. *Southern Mut. Ins. Co. v. Turnley,* 100 Ga. 296 (10) (27 SE 975) (1896); *Southern Bell Tel. & Tel. Co. v. C & S Realty Co.,* 141 Ga. App. 216, 222 (233 SE2d 9) (1977); *Broyles v. Johnson,* 103 Ga. App. 102 (5) (118 SE2d 734) (1961).

Here the plaintiff sued for $63,500 in general damages, and for $25,000 in punitive damages. The jury awarded $15,000 general damages and $5,000 punitive damages. We have reversed the punitive damage award. Under these circumstances, the award of attorney fees must likewise be set aside.

3. Having held that the award of attorney fees is invalid there is no necessity to pass on the evidence question in support of the same.

4. While the evidence is not strong, there is enough to support the jury approved and court ordered permanent injunction.

5. We do not find from reviewing the terms of the permanent injunction order that it is too vague, broad or prohibitive as claimed. Upon considering appellant's motion to restructure, correct and amend, appellant offered no suggestive terminology in the lower court which would cure the alleged vagueness or broadness.

The activities restrained are limited to their possible effect on a definitely described parcel of land of appellee only, and we conclude that it is not subject to the defects claimed.

*Judgment affirmed with direction that the punitive damage award and the attorney fees be deleted from the judgment. All the Justices concur, except Hall and Hill, JJ., who concur in the judgment only.*

ARGUED OCTOBER 11, 1977 — DECIDED NOVEMBER 28, 1977.

*Harris, Watkins, Taylor & Davis, David B. Higdon, John B. Harris, Jr.,* for appellant.
*Robert H. Herndon,* for appellee.