36829, 36830. SMITH et al. v. MILIKIN; and vice versa.

CLARKE, Justice.

This is an appeal and cross-appeal in the land line case concerning lots situated on St. Simons Island. The parties are contesting over a narrow, pie-shaped strip of land in a bitter controversy which is not new. See *Milikin v. Smith,* 240 Ga. 803 (242 SE2d 587) (1978). Milikin is the plaintiff in this action and the Smiths are defendants and counter-claimants.

The case was submitted to the jury on the issue of the location of the line and on the theory of adverse possession as it related to Milikin's claim that the owners and occupants of his lot had possessed up to a hedge-fence structure located on his contended line since 1938. Each of the parties made claims for punitive damages and expenses of litigation and these claims were also submitted to the jury for each side. The jury returned a verdict in favor of Milikin awarding

him $156.00 actual damages, $50,000 punitive damages and $15,000 attorney fees.

1. On appeal the Smiths contend the evidence did not authorize a verdict in favor of Milikin. In civil cases, on review in this court, the evidence will be construed in the light most favorable to the verdict, *Wright v. Thompson,* 236 Ga. 655 (225 SE2d 226) (1976), and we find ample evidence to support the finding in favor of Milikin.

2. The Smiths next contend that even if actual damages were authorized, it was error to submit the issues of punitive damages and expenses of litigation to the jury. They further contend that if punitive damages were authorized, the $50,000 amount is excessive. There is no claim that the amount of attorney fees is excessive.

Milikin purchased his lot, 165, which is involved in this dispute, in 1974 from relatives of his deceased aunt who had owned the property since 1938. Prior to the closing Milikin had the lot surveyed by George Underwood who prepared a plat. It is this plat that Milikin contends properly locates the line in question. At this time appellant Nelle V. Smith owned lots 163 and 164 in the same block; she purchased lot 166 in 1974 after Milikin acquired 165. The boundary in dispute here is that between lots 165 and 166. Nelle Smith also owns the Surf and Sand Apartments across the street from the lots. She had tried to buy lot 165 from Milikin's aunt, and from the estate after her death. She also attempted to buy from the Milikins and the evidence showed that she in fact badly wanted the lot. At trial she testified that she wanted the block of lots, including 165, to control the view for her apartments.

Milikin also offered evidence to show that at the time of Underwood's survey, he met with the Smiths and Bob Walters, the Smiths' immediate predecessor in title in lot 166. There is evidence that Walters agreed with the Underwood survey and pointed out to the Smiths that the boundary between 165 and 166 followed the hedge row of oleanders. There was further evidence that Nelle Smith had a survey made by another surveyor at about the same time and that this survey was in agreement with the Underwood survey and in conformity with the hedge between the lots and old iron pins at the terminus points of the line. There was evidence that these pins were referenced in a 1944 plat and several conveyances in the Smiths' chain of title.

From 1974 and 1976 Milikin cleared lot 165 up to the line as found by Underwood with knowledge of the Smiths. It was Milikin's understanding that the Smiths had conceded in 1974 that this was the correct line. Troubles began, however, when Milikin began erecting a new fence between the iron pins at which time the Smiths claimed that the boundary was not correct. Although there is some

conflict in the evidence after this point, according to Milikin's evidence he made numerous attempts to secure an amicable agreement but the Smiths would agree to nothing, even though Milikin contends he would have accepted a third surveyor's findings to end the dispute. (A third surveyor, Conine, was hired by the Smiths and located the line at a different point at one terminus. At trial, this was the line the Smiths contended was correct, even though it did not conform with the iron pins.)

Milikin filed this suit after Mr. Smith used a sledgehammer in Milikin's presence to destroy the fence, and according to Milikin, drew back the hammer in a threatening manner. The thrust of Milikin's argument at trial was that the Smiths were not in good faith disputing the boundary, but were motivated by the frustrated efforts of Nelle Smith to purchase the whole of lot 165, after acquiring all of the other lots in the block across from her apartments.

A trespasser may be liable for punitive damages if there is evidence of wilful misconduct, malice, oppression or that entire want of care which raises a conscious indifference to consequences. *Guest v. Riddle,* 237 Ga. 535 (228 SE2d 910) (1976). Under the facts of this case, we find it was proper to submit the issue to the jury. The expenses of litigation are not vindictive or punitive damages, but stand alone, based on bad faith in the original transaction. *General Refractories Co. v. Rogers,* 240 Ga. 228 (239 SE2d 795) (1977). "If there was a preceding or underlying transaction that had a relationship to later litigation, or if the later litigation arose because of a dispute about the earlier transaction, and if there is evidence showing bad faith, or being stubbornly litigious, or causing unnecessary trouble and expense by a party involved in the earlier or underlying transaction, it is proper to submit the issue of expenses of litigation to the jury for determination." *Guest v. Riddle,* supra at 537. Under our review of the record, the jury was authorized to award expenses of litigation in this case. See *Greenway v. Griffith,* 225 Ga. 632 (170 SE2d 423) (1969).

3. On review of this case, we must also reject the Smiths' claim that the amount of punitive damages is so excessive as to demand a new trial as a matter of law. Milikin sought punitive damages of $100,000 in his complaint. The Smiths' counterclaim, which was submitted to the jury and is the subject of Milikin's cross appeal, included a prayer for $300,000 in punitive damages. The basis of the punitive damages awarded under Code Ann. § 105-2002 was to deter the wrongdoer and not as a compensation for wounded feelings. In such cases the award is not measured as a compensation, but is fixed in an amount necessary to deter future acts. The rule which requires the amount of punitive damages to evidence a reasonable proportion

to the extent of the injury applies to exemplary damages for wounded feelings. *King v. Towns,* 102 Ga. App. 895 (5) (118 SE2d 121) (1960). The amount, as measured by the enlightened conscience of an impartial jury, which would be required to deter future acts necessarily depends upon the facts of the particular case.

In discussing when a verdict may be found so excessive as to infer undue bias or prejudice, courts have said such a verdict must "carry its death warrant upon its face," be "monstrous indeed," "must shock," or "appear exorbitant." *Fields v. Jackson,* 102 Ga. App. 117, at 122 (115 SE2d 877) (1960). It is also true in considering excessiveness that an appellate court ". . . does not have the broad discretionary powers invested in trial courts to set aside verdicts, and where the trial court before whom the witnesses appeared had the opportunity of personally observing the witnesses . . . has approved the verdict, this court is without power to interfere unless it is clear from the record that the verdict of the jury was prejudiced or biased or was procured by corrupt means." *Kiker v. Davis,* 103 Ga. App. 289, 290 (118 SE2d 861) (1961). The excessiveness of the verdict was raised below on motion for new trial and overruled by the judge who had presided over the five-day trial. As said in *Adkins v. Williams,* 23 Ga. 222, 224 (1857), "The Court below, did not think the damages excessive. And the Court trying the case, must ever receive more light on the question of excessive damages, than it can impart to any other Court." Considering all of the circumstances in this case, we do not find the trial court erred in declining to find the verdict excessive.

4. The remaining enumerations are without merit. As the judgment in Case No. 36829 is affirmed, the issues raised in the cross-appeal are moot and that appeal is therefore dismissed.

*Judgment affirmed in Case No. 36829; Case No. 36830 is dismissed as moot. All the Justices concur, except Jordan C. J. and Smith, J., who dissent.*

Decided March 13, 1981 —
Rehearing denied March 31, 1981.

*Dickey, Whelchel, Miles & Brown, Terry L. Readdick,* for appellants.
*George Rountree,* for appellee.

Jordan, Chief Justice, dissenting.
This is a bitterly disputed land line case over four and one-half feet of land. The jury found for the appellee Milikin and awarded him $156 actual damages, $50,000 punitive damages, and $15,000 attorney fees.

In my opinion the verdict for punitive damages under the facts of this case is excessive as a matter of law and the obvious result of gross mistake or undue bias.

I would reverse on this ground.

I am authorized to state that Justice Smith joins in this dissent.